Compensation Appeals Board
No. 94-588

# APPEAL OF MARK S. GRIFFIN
## (New Hampshire Compensation Appeals Board)
### February 12, 1996

*Engel, Gearreald & Gardner, P.A.*, of Exeter (*Mark S. Gearreald* on the brief and orally), for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Julie A. Quigley* on the brief, and *Douglas N. Steere* orally), for the respondent, Kidder Building & Wrecking, Inc.

BROCK, C.J. The petitioner, Mark S. Griffin, appeals a decision by the New Hampshire Compensation Appeals Board (the board) denying his claim for workers' compensation benefits. We reverse and remand.

The petitioner was employed as a laborer for the respondent, Kidder Building & Wrecking, Inc. (Kidder). His work entailed the duties associated with wrecking and demolition at various locations, including Maine, Massachusetts, and Rhode Island. On May 21, 1992, the petitioner had been on a demolition job for Kidder in Warwick, Rhode Island, for approximately two weeks. This job required that the petitioner and other Kidder employees remain overnight in Rhode Island. They received daily meal allowances and motel accommodations provided by Kidder and were permitted to use the company vehicle for transportation.

After dinner at a restaurant on May 21, the petitioner was driving the company truck. He had had four or five beers with dinner. His foreman, Ronald Davis, was in the front passenger seat, and co-workers Brian White and Bill Darling were seated in the back. At some point, for reasons the participants dispute, Davis and the petitioner argued, and Davis removed the keys from the vehicle while the petitioner was driving. An altercation between the two men ensued at the side of the road outside the vehicle. Punches were thrown, and White hit the petitioner on the head with a two-by-four piece of wood, causing injury.

The board, which included as a member Nicholas Georges, an adjuster employed by the New Hampshire Automobile Dealers Association, ruled that the petitioner's injury did not arise out of and in the course of employment, *see* RSA 281-A:2, XI (Supp. 1995). On appeal the petitioner argues that: (1) Mr. Georges should have been removed from the board because of his business connection to Kidder's counsel, *see Appeal of Hurst*, 139 N.H. 702, 660 A.2d 1143 (1995); (2) the board improperly applied New Hampshire Administrative Rules, Lab 207.02 and 207.03 (Labor Rules) to deny the petitioner's request for a rehearing; and (3) the board erred as a matter of law in deciding that his injury did not arise out of and in the course of his employment. The employer notes that the petitioner did not request Mr. Georges' removal prior to or during the hearing, and contends that this issue is therefore not preserved for appeal. Because we reverse on the merits, we need not address the first issue. We first address the petitioner's procedural argument.

Labor Rules 207.02 and 207.03 correspond to RSA 541:3 (1974) (amended 1994) and :4 (1974). They deal with the time and specificity requirements, respectively, for a motion for rehearing of the board's decision. The petitioner had twenty days after the board's decision within which to "apply for a rehearing in respect to any matter determined in the . . . proceeding . . . specifying in the motion for rehearing the ground therefor." N.H. ADMIN. RULES, Lab 207.02; *see* RSA 541:3 (1974) (amended 1994). The motion was required to "set forth fully every ground upon which it is claimed that the decision or order complained of is unlawful or unreasonable." N.H. ADMIN. RULES, Lab 207.03; *see* RSA 541:4.

The board rendered its decision on February 28, 1994. On March 18, 1994, the petitioner filed a letter with the department of labor, stating: "I would like to file an appeal for reconsideration on the decision rendered on the Appeals hearing which was held on February 28, 1994 based on the discrepancies found between this Appeals hearing and the hearing held on March 25, 1993." The letter indicated that the attorney who had represented the petitioner at the hearing had informed him on March 16, with four days remaining in the period for filing a request for rehearing, that he would no longer represent him. In addition, according to the letter, it was only on March 17, when the attorney's paralegal called the petitioner to explain the procedure, that the petitioner learned of the twenty-day window for filing a motion for rehearing. After retaining new counsel, the petitioner filed a motion to amend motion for rehearing on April 18, 1994, alleging the specific grounds now before this court.

On August 1, 1994, the board denied the request for rehearing. Relying on Labor Rules 207.02 and 207.03, the board held that the petitioner's initial *pro se* letter did not meet the specificity requirement and that the subsequent motion was untimely. The board further stated that it "has carefully reviewed its decision dated February 28, 1994 and believes that a rehearing would be a re-hashing of evidence already presented and decided on."

RSA 541:4 provides:

> Such motion [for rehearing] shall set forth fully every ground upon which it is claimed that the decision or order complained of is unlawful or unreasonable. No appeal from any order or decision of the commission shall be taken unless the appellant shall have made application for rehearing as herein provided, and when such application shall have been made, no ground not set forth therein shall be urged, relied on, or given any consideration by the court,

*unless the court for good cause shown shall allow the appellant to specify additional grounds.*

(Emphasis added.) We find "good cause" to allow the petitioner to pursue the specific argument he makes on appeal in the following particular facts of his case: the late withdrawal of his first attorney without apprising him of the procedures for rehearing; his timely *pro se* motion for rehearing; and a motion to amend the motion for rehearing, containing the specific ground here raised, that was filed over three months prior to the board's rendering a decision on the motion for rehearing. In these circumstances the petitioner's argument that the board erred in ruling his injury did not arise out of and in the course of employment is properly before us.

■   To be compensable under the Workers' Compensation Law, the petitioner's injury must have "aris[en] out of and in the course of employment." RSA 281-A:2, XI. We construe the statute liberally, resolving all reasonable doubts in statutory construction in favor of the injured employee in order to give the broadest reasonable effect to the remedial purpose of workers' compensation laws. *Petition of Abbott*, 139 N.H. 412, 416, 653 A.2d 1113, 1115 (1995); *Whittemore v. Sullivan Cty. Homemakers Aid Serv.*, 129 N.H. 432, 435, 529 A.2d 919, 920–21 (1987). "Accordingly, the employee can expect a liberal interpretation of when the employment begins or ends." *Heinz v. Concord Union School Dist.*, 117 N.H. 214, 220, 371 A.2d 1161, 1165 (1977) (quotation, brackets, and ellipses omitted).

■   To meet this scope-of-employment test, the petitioner must prove:

> (1) that the injury arose out of employment by demonstrating that it resulted from a risk created by the employment; and (2) that the injury arose in the course of employment by demonstrating that (A) it occurred within the boundaries of time and space created by the terms of employment; and (B) it occurred in the performance of an activity related to employment, which may include a personal activity if reasonably expected and not forbidden, or an activity of mutual benefit to employer and employee.

*Murphy v. Town of Atkinson*, 128 N.H. 641, 645-46, 517 A.2d 1170, 1172-73 (1986) (citations omitted).

■   The petitioner's situation, that of the so-called "traveling employee" whose business requires that he be away from home, presents us with a case of first impression. We do not, however, write on a clean slate: "With respect to perils of travel, . . . th[is] court

has held that special travel risks imposed by special duties are properly considered hazards of the employment," R. GALWAY, NEW HAMPSHIRE WORKERS' COMPENSATION MANUAL § 2.04, at 2-8 (1993), and thus arise out of employment, *id.*; *see Heinz*, 117 N.H. 214, 371 A.2d 1161 (teacher's death on roadway while traveling home before returning to work for extra duty held to have arisen out of and in the course of employment); *Henderson v. Sherwood Motor Hotel*, 105 N.H. 443, 201 A.2d 891 (1964) (waitress's roadway death while returning home from extra duty held to have arisen out of and in the course of employment). The question here is whether by virtue of being a traveling employee the petitioner was subject to special travel risks as a result of his employment such that his injury is compensable. *Cf. Henderson*, 105 N.H. at 445, 201 A.2d at 894.

The traveling employee is generally considered to be within the scope of his employment throughout his sojourn:

> Employees whose work entails travel away from the employer's premises are held in the majority of jurisdiction[s] to be within the course of their employment continuously during the trip, except when a distinct depart[ure] on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.

1A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 25.00, at 5-275 (1995) (footnote omitted); *see, e.g., Boyce v. Potter*, 642 A.2d 1342, 1344 (Me. 1994) (employer's control in assigning employees to different work sites and travel requirement that increases normal risk renders any injury during travel compensable).

The traveling employee rule comports with our test in *Murphy* for determining the compensability of injuries suffered during activities peripheral to employment. "Where the employment requires travel, the employee is consequently exposed to hazards [he or] she would otherwise have the option of avoiding. Thus the hazards of the route become the hazards of the employment." *Whittemore*, 129 N.H. at 436, 529 A.2d at 921. Because the petitioner was required by his employment to live away from home, the risk of injury to him during travel necessary to take his meals was created by his employment. *See Chandler v. Nello L. Teer Co.*, 281 S.E.2d 718, 720 (N.C. Ct. App. 1981) (employee on business trip going to or returning from meal "is performing an act incident to his employment"), *affirmed*, 287 S.E.2d 890 (N.C. 1982). The first prong of the *Murphy* test is therefore satisfied.

■ ■ The second *Murphy* criterion — that the injury occur within the boundaries of time and space created by the employment — is also met here. "[W]here the job requires extensive travel, the time and space criteria cannot be applied in a conventional manner." *Whittemore*, 129 N.H. at 436, 529 A.2d at 922. The petitioner was not injured while driving home from a voluntary "pick-up ball game," *Murphy*, 128 N.H. at 647, 517 A.2d at 1173, but was returning from a meal on the road necessitated by the condition of being employed away from home. *See Brown v. Palmer Construction Company, Inc.*, 295 A.2d 263, 266 (Me. 1972) (meals out of state not merely necessity of traveling employee but necessity of employer in furtherance of out-of-state contract).

■ Finally, relative to proof that the injury "occurred in the performance of an activity related to employment," *Murphy*, 128 N.H. at 645, 517 A.2d at 1173, Kidder's furnishing a meal allowance to its employees while out of state, as well as allowing use of a company vehicle for personal travel, indicates that the petitioner's personal activity of dining out was reasonably expected and not forbidden by the employer, *see id.* The petitioner's injury thus arose in the course of his employment. *See Frassa v. Caulfield*, 491 N.E.2d 657, 660 (Mass. App. Ct.) (employees receiving meal allowance were acting in the course of their employment when traveling for meals, "travel clearly impelled by the nature and conditions of the employment"), *review denied*, 495 N.E.2d 310 (Mass. 1986).

■ Kidder argues that this case is controlled by *LaBonte v. National Gypsum Co.*, 110 N.H. 314, 269 A.2d 634 (1970), and *Newell v. Moreau*, 94 N.H. 439, 55 A.2d 476 (1947), in which we looked at the nature of the quarrel between co-workers to determine whether benefits were recoverable. Because, Kidder argues, the petitioner's injury grew out of a personal quarrel unrelated to employment, it did not arise out of the employment. *See LaBonte*, 110 N.H. at 316, 269 A.2d at 636; *Newell*, 94 N.H. at 441, 55 A.2d at 478.

This argument rests on too narrow a view of what is "related to employment." As we have held above, the activity of driving to and from the employees' dinner meal arose out of and in the course of their employment. According to Davis, he removed the keys from the vehicle while the petitioner was driving because "his driving wasn't all that great." It was this event that caused the quarrel resulting in the petitioner's injury. The injury was thus work-related because the driving was work-related. *See Whittemore*, 129 N.H. at 435, 529 A.2d at 921 ("activity related to employment may include personal activity if reasonably expected and not forbidden").

The question is whether the risk of injury to the petitioner was reasonably within the risks of his particular employment situation. The petitioner and his co-workers, in addition to working long hours together during the day, were required to reside together at a motel for an extended period. With no dining facilities at the motel and only one vehicle for all four men to use after working hours, Kidder should reasonably have expected that these employees would be spending a significant amount of time together. Moreover, according to the foreman, Davis, it was even acceptable and typical for employees on a job out of state to have a few drinks after work. An altercation in such a context is not entirely unforeseeable.

"If the friction and strain arises [*sic*] . . . because of the enforced contacts resulting from the duties of the employment . . . and quarrels develop," *LaBonte*, 110 N.H. at 316-17, 269 A.2d at 636 (quotation omitted), the quarrels arise out of the employment, *cf. id.* Here, because the petitioner's injury resulted "from the conditions and obligations of the employment," *id.* at 317, 269 A.2d at 636 (quotation omitted), it was compensable. Accordingly, we hold that the board erred in ruling that the petitioner's injury did not arise out of and in the course of his employment.

*Reversed and remanded.*

BRODERICK, J., did not sit; the others concurred.