Michael KOLSON, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

and

**Transportation Leasing, Inc., Intervenor.**

No. 95–AA–197.

District of Columbia Court of Appeals.

Submitted May 22, 1997.

Decided Aug. 7, 1997.

Wayne M. Mansulla, Washington, DC, was on the brief for petitioner.

Charles F.C. Ruff, Corporation Counsel at the time the statement was filed, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Stephen P. Zachary, Washington, DC, was on the brief for intervenor.

Before WAGNER, Chief Judge, REID, Associate Judge, and KERN, Senior Judge.

REID, Associate Judge.

On June 20, 1987, Petitioner Michael Kolson sustained injuries as a result of an assault which he claims arose out of and in the course of his employment as a bus driver for Greyhound Lines, Inc. A hearing examiner for the Department of Employment Services ("DOES" or "agency") denied his claim for temporary total disability under the District of Columbia Workers' Compensation Act of 1979, D.C.Code §§ 36–301 *et. seq.* (1993) ("WCA"), on the ground that Mr. Kolson did not sustain an injury which arose in the course of his employment. We reverse and remand for further proceedings consistent with this opinion.

## FACTUAL SUMMARY

After finishing a twelve hour driving shift, Mr. Kolson pulled into the Greyhound bus terminal located in Washington, D.C., around 4:00 a.m. He informed the dispatcher that he needed a hotel lodging slip called a "chit"[1] because he was too tired to drive to his home in Columbia, Maryland. The dispatcher requested that Mr. Kolson first transport a bus to another nearby garage and then return to the terminal to pick up the hotel "chit" slip. At approximately 4:30

a.m., after running the errand as requested, Mr. Kolson left the Greyhound terminal with his "chit" slip and headed to the Harrington Hotel. While walking to the hotel, Mr. Kolson was struck from behind with a pipe by an unidentified assailant. The assailant was scared off by a bystander who came to Mr. Kolson's rescue. As a result of the attack, he was taken by ambulance to a hospital and treated for his injuries. Due to physical injuries and post-traumatic stress, Mr. Kolson was not able to return to work until October 8, 1987. He was unable to resume his position as a bus driver and became a welder for Greyhound.

Mr. Kolson filed a claim for benefits under the WCA, seeking an award for temporary total disability under the Act, from June 20, 1987 to October 8, 1987. A full evidentiary hearing was held by the agency on January 21, 1988. The sole issue addressed was "whether claimant's injury arose out of and in the course of his employment." No witnesses were called to testify at the hearing and the parties stipulated to the facts.

The DOES hearing examiner issued a Compensation Order on February 18, 1988, denying Mr. Kolson's claim for disability benefits because his injury did not arise in the course of his employment. The hearing examiner stated:

> [W]hen claimant checked in his bus, reported to the dispatcher, left employer's premises and was walking toward employer-provided accommodations, he was outside the course of his employment. Claimant had completed the performance of his duties as a bus operator and was free to go home.

The hearing examiner rejected Mr. Kolson's argument that he "is a traveling employee and therefore receives protection because his injury had its origin in a risk created by sleeping away from home." As the hearing examiner explained:

> [e]ven assuming, ... *arguendo*, that claimant is a traveling employee, this categorization is to no avail to claimant since I find that claimant had completed any travel

---

1. A "chit" is a voucher provided at Greyhound's expense to bus drivers for overnight lodging at specified hotels. In this case, a "chit" slip was provided to Mr. Kolson for lodging at the Harrington Hotel which, at the time of this case, was six blocks from the Greyhound bus terminal.

when he checked out from employer's terminal.

The hearing examiner did not consider Mr. Kolson's arguments that "the nature of his employment forced him to arrive in the District at an odd hour and that employer's premises were located in an area where alleged criminal activity is present," because "they speak to the 'arising out of' test for compensation and [the hearing examiner] determined that claimant's injury did not satisfy the 'in the course of' test of compensability."

Mr. Kolson filed an application for review of the Compensation Order on March 18, 1988. The DOES Director affirmed the Compensation Order on January 26, 1995. Mr. Kolson asserts in this appeal that the Director erred in denying his application for benefits.

## ANALYSIS

■ Mr. Kolson contends that his injury arose out of and in the course of his employment. Thus, he claims that the Director's decision affirming the Compensation Order denying him benefits was incorrect as a matter of law. The hearing examiner found that "when claimant checked in his bus, reported to the dispatcher, left employer's premises and was walking toward employer-provided accommodations, he was outside the course of his employment." Mr. Kolson "submits that the facts of this case except him from the 'going and coming' rule" due to his status as a traveling employee.

The hearing examiner rejected the invitation to apply the traveling employee exception, despite Mr. Kolson's argument that (1) his job required him to travel interstate, (2) he had just completed a twelve hour day, and (3) he was walking to employer-paid hotel accommodations at the time of his attack. Instead, the examiner found that "[c]laimant had completed the performance of his duties as a bus operator and was free to go home" at the time he sustained injury, and thus concluded that Mr. Kolson had "completed any travel when he checked out from the employer's terminal." Consequently, the traveling employee rule did not apply. While other jurisdictions have awarded disability benefits to workers injured during employment travel, this court has yet to address this issue. We now conclude that the hearing examiner should have applied the traveling employee exception in Mr. Kolson's case.

We have stated previously that "there is a presumption [in the WCA] that a 'claim comes within the provisions of [the WCA].' This sound presumption, designed to effectuate the humanitarian purposes of the statute, reflects a 'strong legislative policy favoring awards in arguable cases.'" *Ferreira v. District of Columbia Department of Employment Servs.*, 531 A.2d 651, 655 (D.C.1987); *see also* D.C.Code § 36–321(1). Thus, "[i]n considering [Mr. Kolson's] argument that the [agency] decision is not supported by reliable, probative, substantial evidence in the record, *see* D.C.Code §§ 1–1509(e), – 1510(a)(3)(E) (1992 Repl.), we begin with the premise that the agency's decision 'is presumed to be correct, so that the burden of demonstrating error is on the appellant or petitioner who challenges the decision.'" *Robinson v. Smith,* 683 A.2d 481, 487 (D.C. 1996) (quoting *Cohen v. Rental Housing Comm'n,* 496 A.2d 603, 605 (D.C.1985)).

■ "In order to receive workers' compensation, an injury must both arise out of and occur within the course of the employment." *Grayson v. Department of Employment Services,* 516 A.2d 909, 911 (D.C.1986) (citations omitted). The "general rule [is] that the occurrence of employee injuries sustained off the work premise, while enroute to or from work, do not fall within the category of injuries 'in the course of employment.'" *Id.* (referencing 1 LARSON, The Law of Workmen's Compensation § 15.00). This rule is often referred to as the "going and coming" rule.

■ In concluding that the "[c]laimant's injury did not arise in the course of his employment," and thus it was unnecessary to consider whether Mr. Kolson's injury arose out of his employment, the hearing examiner narrowly interpreted the phrase "arising in the course of the employment" and made a sharp distinction between that phrase and the words "arising out of the employment." As we have stated previously,

We recognize ... that ordinarily we must defer to an agency's interpretation of the governing statute, as well as its own regulations. That interpretation is entitled to controlling weight unless it conflicts with the statute ..., is inconsistent with the regulation ..., or otherwise is contrary to established legal doctrine....

*Gunty v. Department of Employment Services*, 524 A.2d 1192, 1196 (D.C.1987) (citations omitted). We conclude that, as applied to Mr. Kolson, the agency's interpretation of its governing statute is contrary to established legal doctrine.

Although the concepts "arising in the course of the employment" and "arising out of the employment" have distinct meanings, "the two are not totally independent; frequently proof of one will incidentally tend to establish the other." *Sentara Leigh Hosp. v. Nichols*, 13 Va.App. 630, 414 S.E.2d 426, 428 (1992). Indeed, other jurisdictions have construed these concepts liberally in traveling employee cases. *See Voight v. Rettinger Transportation, Inc.*, 306 N.W.2d 133, 136 (Minn.1981).

The traveling employee exception has been recognized by most jurisdictions in this country:

Employees whose work entails travel away from the employer's premises are held in the majority of jurisdiction[s] to be within the course of their employment continuously during the trip, except when a distinct depart[ure] on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.

2 LARSON, *supra*, § 25.00 (1997) (footnote omitted).

Traveling employees are employees for whom travel is an integral part of their jobs, such as those who travel to different locations to perform their duties, as differentiated from employees who commute daily from home to a single workplace. Traveling employees' travel is deemed a work-related risk.... [T]hey differ from ordinary commuters, and are exposed, by virtue of their employment, to risks great-er than those encountered by the traveling public.

*Boyce v. Potter*, 642 A.2d 1342, 1343 (Me. 1994) (citations omitted). As the Court of Appeals of New York recognized, in the case of a traveling employee, the traditional

theory of compensability has been expanded in recognition of the fact that a change in environment creates a greater risk of injury to the employee so that injuries to a traveling employee may be compensable even if the employee at the time of the accident was not engaged in the duties of his [or her] employment.

*Capizzi v. Southern Dist. Reporters, Inc.*, 61 N.Y.2d 50, 471 N.Y.S.2d 554, 555, 459 N.E.2d 847, 848 (1984) (citations omitted). In Mr. Kolson's case, the concepts "arising out of the employment" and "arising in the course of the employment" must be interpreted in the context of a traveling employee and the greater risk to which that employee is exposed.

The Supreme Court of New Hampshire has explained the "arising out of the employment" and the "arising in the course of employment" requirements as follows:

To meet this scope-of-employment test, the petitioner must prove:

(1) that the injury arose out of employment by demonstrating that it resulted from a risk created by the employment; and (2) that the injury arose in the course of employment by demonstrating that (A) it occurred within the boundaries of time and space created by the terms of employment; and (B) it occurred in the performance of an activity related to employment, which may include a personal activity if reasonably expected and not forbidden, or an activity of mutual benefit to employer and employee.

*Appeal of Griffin*, 140 N.H. 650, 671 A.2d 541, 543 (1996). New Hampshire has recognized that "[w]here the job requires extensive travel, the time and space criteria cannot be applied in a conventional manner." *Id.*, 671 A.2d at 544 (citation omitted). Virginia has interpreted the "arising out of" and "arising in the course of" concepts in traveling employee cases as follows:

The phrases "arising out of" and "in the course of" the employment are not synonymous. The words "arising out of" refer to the origin or cause of the injury while the words "in the course of" refer to the time, place and circumstances under which the injury occurred.

*Southern Motor Lines Co. v. Alvis*, 200 Va. 168, 104 S.E.2d 735, 737 (1958) (citations omitted). Further,

an accident occurs "in the course of employment" when it takes place within the period of employment, at a place where the employee may reasonably be expected to be, and while he [or she] is reasonably fulfilling duties of his [or her] employment or doing something reasonably incidental thereto.

*Id.*, 104 S.E.2d at 737–38 (citations omitted).

With respect to whether an activity is related to or incidental to employment in traveling employee cases, the Supreme Court of Minnesota has determined that "[r]easonable activities are those which may normally be expected of a traveling employee as opposed to those which are clearly unanticipated, unforseeable and extraordinary." *Voight, supra*, 306 N.W.2d at 138 (citations omitted).[2] Various jurisdictions have held the following injuries to traveling employees to be compensable because they arose in the course of employment and were reasonably expected: (1) head injury to a laborer occurring during a return trip from dinner after out of town demolition work, where the employee was hit in the head with a piece of wood by another employee, *Appeal of Griffin, supra*, 671 A.2d at 544; (2) injuries caused by a slip and fall in Toronto, Canada when a "transcriber/typist" from New York was getting into the bathtub early in the morning to take a shower before returning to New York, *Capizzi, supra*, 471 N.Y.S.2d at 556, 459 N.E.2d at

849; (3) death due to an accidental fall from a hotel window of a truck driver who registered at hotel after transporting a shipment of eggs from Nebraska to Georgia, *Southern Motor Lines Co., supra*, 104 S.E.2d at 738–39; (4) death from suffocation when a traveling salesman's head was caught between two metal slats of a bed in the rooming house where he stayed while on a trip to another city in Arizona to sell feed, *Peterson v. Indus. Comm'n*, 16 Ariz.App. 41, 490 P.2d 870, 873 (1971); (5) death in an automobile collision while union official was returning to a motel after a night of socializing while on an official out of town business trip, *District 141, Intern. Ass'n v. Industrial Comm'n*, 79 Ill.2d 544, 39 Ill.Dec. 196, 202, 404 N.E.2d 787, 793 (1980); (6) ankle injury to a bus driver when he crossed the street to go to a restaurant for lunch after being relieved by another driver during his city/suburban bus route, *Port Auth. of Allegheny County, supra*, 452 A.2d at 904. These cases reveal that the traditional meaning of "arising in the course of the employment" generally is not followed in traveling employee cases, and a traveling employee may be compensated for an injury even though it took place off the work premises while the employee was going to or coming from work.

■ We conclude that, notwithstanding our decision in *Grayson, supra*, when a traveling employee is injured while engaging in a reasonable and foreseeable activity that is reasonably related to or incidental to his or her employment, the injury arises in the course of employment.[3] His injury also grew out of his employment because it resulted from a risk created by his employment—his arrival at odd hours in places away from his home and the necessity of using the public streets to seek lodging. Here, Mr. Kolson, a Greyhound bus driver who lived in Columbia,

---

**2.** According to the Commonwealth Court of Pennsylvania, "[t]he general rule is that a travelling employee while so engaged is within the course of his employment unless what he was doing at the time of the accident is so foreign to and removed from his [or her] usual employment as to constitute an abandonment thereof." *Port Auth. of Allegheny County v. W.C.A.B.*, 70 Pa. Cmwlth. 163, 452 A.2d 902, 903–04 (1982) (citations omitted).

**3.** According to the Court of Appeals of Arizona, "[a]n accident has been said to occur in the course of employment if the employee is injured while he [or she] is doing what a man [or woman] so employed may reasonably do within a time during which he [or she] is employed and at a place where he [or she] may reasonably be during that time." *Peterson, supra*, 490 P.2d at 873 (citation omitted).

Maryland, arrived in the District from an out of town assignment at 4 a.m. He was too tired to drive to his home in Maryland and requested a hotel "chit" from his employer. The employer agreed, but asked Mr. Kolson to drive a bus to a nearby terminal before going to the hotel. Mr. Kolson complied with the request and, upon his return to the Greyhound terminal, was given a "chit" for the Hotel Harrington. Since the hotel was located only about six blocks from the then existing Greyhound terminal, it was reasonable and foreseeable that Mr. Kolson would walk to the hotel from the terminal, and that at 4:30 a.m., there might be some unusual risks along the way. Thus, given the circumstances of Mr. Kolson's interstate employment, the time of his arrival in the District, the location of his home in Maryland, and his need for local lodging, his walk to the hotel was related to or incidental to his employment. Consequently, the injury he received while walking from the terminal to register at a nearby hotel at 4:30 a.m., with a "chit" provided by his employer, arose in the course of and out of his employment.

For the foregoing reasons, we reverse and remand this matter to the agency for further proceedings consistent with this opinion.

*So ordered.*