*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-AA-1403

LEMAKIA GAINES, PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, INTERVENOR.

On Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(CRB-106-17)

(Argued January 17, 2019       Decided June 27, 2019)

*Bruce M. Bender*, with whom *Justin M. Reiner* and *Michael J. Foley* were on the brief, for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Stacy L. Anderson*, Acting Deputy Solicitor General at the time the statement was filed, filed a statement in lieu of brief.

*Mark H. Dho*, with whom *Sarah O. Rollman* was on the brief, for intervenor.

Before THOMPSON, BECKWITH, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*:  Petitioner Lemakia Gaines challenges an order of the Compensation Review Board (CRB) denying her claim for workers' compensation benefits.  We vacate the order.

**I.**

After an evidentiary hearing, an Administrative Law Judge (ALJ) found the following facts, which appear to be undisputed.   On February 3, 2016, Ms. Gaines was scheduled to work a "swing shift" as a rail-station manager for intervenor Washington Metropolitan Area Transit Authority (WMATA).  Her first shift was at the Dupont Circle station and ended at 4:15 p.m.  Her second shift was at the Farragut North station and was scheduled to begin at 6:20 p.m.   The period between the two shifts was an unpaid break.  After finishing her first shift, Ms. Gaines rode the Metrorail one stop to the Farragut North station.  Ms. Gaines was in uniform, and she was required to assist customers while traveling in the Metrorail system, whether or not she was on duty or on a break.

Ms. Gaines planned to take her break and eat lunch in the employee-only auxiliary room at the Farragut North station before starting her next shift. WMATA permits employees to use such rooms as break or lunch rooms.  Break

rooms are accessible only with a master key issued to station managers and employees.

After Ms. Gaines arrived at the Farragut North station, she took the escalator up to the street to get a soda from a nearby store. Around 4:40 p.m., on her way back down the escalator, she slipped and fell down several steps. Ms. Gaines felt immediate pain in her neck, back, left shoulder, and left arm, and was bleeding on her left leg. She was diagnosed with contusions, abrasions, and strains to the left shoulder, left arm, lumbar spine, thoracic spine, and neck. Ms. Gaines was placed off of work and remained off of work in the following months due to continuing pain. Ms. Gaines filed a workers' compensation claim for medical expenses and disability benefits.

The ALJ granted Ms. Gaines's claim. WMATA sought review by the CRB, which reversed and directed that Ms. Gaines's claim be denied. According to the CRB, Ms. Gaines's claim did not "arise out of" Ms. Gaines's employment, as required by D.C. Code § 32-1501(12) (2019 Repl.), because the injury occurred while Ms. Gaines was on a lengthy break between shifts.

## II.

We review a decision of the CRB to determine whether the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012) (internal quotation marks omitted). We defer to the CRB's reasonable interpretation of statutes that the CRB is charged with administering. *Howard Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 200 A.3d 1244, 1248 (D.C. 2019). Workers' compensation statutes "are remedial in character and are generally construed liberally in favor of claimants." *Marsden v. District of Columbia*, 142 A.3d 525, 529 (D.C. 2016); *see also, e.g.*, *Kolson v. District of Columbia Dep't of Emp't Servs.*, 699 A.2d 357, 359 (D.C. 1997) (noting "strong legislative policy favoring awards in arguable cases") (internal quotation marks omitted).

## A.

To be compensable under the Workers' Compensation Act, an injury must "aris[e] out of and in the course of employment." D.C. Code § 32-1501(12). "The requirement that an injury arise out of employment refers to the origin or cause of

the injury." *Bentt v. District of Columbia Dep't of Emp't Servs.*, 979 A.2d 1226, 1232 (D.C. 2009) (brackets and internal quotation marks omitted).

> [R]isks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and "neutral" risks[ -- ]*i.e.*, risks having no particular employment or personal character. Harms from the first are universally compensable. Those from the second are universally noncompensable. To determine whether harm from an injury caused by a neutral risk arises out of one's employment, this court has adopted the positional-risk test. Under the positional-risk test, an injury arises out of employment so long as it would not have happened *but for* the fact that conditions and obligations of the employment placed claimant in a position where he [or she] was injured.

*Id.* (citations and internal quotation marks omitted). The positional-risk test "is a 'liberal' standard which obviates any requirement of employer fault or of a causal relationship between the nature of the employment and the risk of injury. Nor need the employee be engaged at the time of the injury in activity of benefit to the employer." *Clark v. District of Columbia Dep't of Emp't Servs.*, 743 A.2d 722, 727 (D.C. 2000) (citations omitted).

We determine whether an injury arose "in the course of" employment on the basis of "the time, place[,] and circumstances under which the injury occurred." *Bentt*, 979 A.2d at 1234 (internal quotation marks omitted). "[A]n accident occurs 'in the course of employment' when it takes place within the period of

employment, at a place where the employee may reasonably be expected to be, and while he or she is reasonably fulfilling duties of his or her employment or doing something reasonably incidental thereto." *Id.* (internal quotation marks omitted). Injuries that occur outside the precise hours of employment may in certain circumstances be deemed to have occurred in the course of employment, if they occur during "a reasonable and foreseeable activity that is reasonably related to or incidental to [the] employment or [that] resulted from a risk created by [the] employment." *Vieira v. District of Columbia Dep't of Emp't Servs.*, 721 A.2d 579, 583 (D.C. 1998) (internal quotation marks omitted).

Although "arising out" of employment and "arising in the course of" employment are distinct concepts, "the two are not totally independent; frequently proof of one will incidentally tend to establish the other." *Kolson*, 699 A.2d at 360 (internal quotation marks omitted). Moreover, "when it is established that an injury or death occurs in the 'course of employment,' that fact strengthens the presumption that it 'arises out of the employment,['] and *any doubts as to that* fact should be resolved in the claimant's favor." *Clark*, 743 A.2d at 728 (brackets and internal quotation marks omitted).[1]

---

[1]  The CRB has adopted the so-called "quantum" approach, under which a weaker showing as to one of these concepts can be counterbalanced by a stronger

(continued . . . )

**B.**

We first note two antecedent issues, one factual and one legal. The factual issue is whether Ms. Gaines was on duty or off duty at the time of the injury. It was undisputed that Ms. Gaines was on an unpaid break between her two shifts. Relying on employment records among other things, however, Ms. Gaines contended that she was on duty during the break. WMATA introduced testimony that Ms. Gaines was off duty. The ALJ did not make a finding on that disputed issue. The CRB, however, stated that Ms. Gaines was off duty. We doubt that the CRB was permitted to make its own finding in the first instance on this disputed factual issue. *Cf., e.g.*, *Poole v. District of Columbia Dep't of Emp't Servs.*, 77 A.3d 460, 469 n.12 (D.C. 2013) ("Just as the court is required to defer to the ALJ's factual finding[s], so must the CRB. The CRB may not consider the evidence *de novo* and make factual findings different from those of the ALJ.") (brackets, citation, and internal quotation marks omitted). We need not address that issue,

---

( . . . continued)

showing as to the other. *See, e.g.*, *Hicks*, CRB No. 07-050, 2007 WL 1439320, at *3 (D.C. Comp. Review Bd. Apr. 25, 2007). Ms. Gaines argues that the CRB erred in this case by failing to apply that approach. Because we conclude that Ms. Gaines has established that her injury arose both out of her employment and during the course of her employment, we need not address that argument.

however, because it does not affect our disposition. Even if we assume that Ms. Gaines was off duty at the time of the injury, we conclude that the injury was compensable.

The legal issue is whether Ms. Gaines's injury arose from a risk that was distinctly associated with her employment, was personal to Ms. Gaines, or was neutral. The ALJ concluded that the risk at issue was neutral. The CRB did not expressly decide that issue but appears to have at least assumed arguendo that the risk was neutral. In this court, Ms. Gaines argues that the risk was neutral, whereas WMATA contends that the risk was personal to Ms. Gaines. We have no difficulty concluding that the risk of injury in this case was at least neutral. We have treated risks as personal when they are "thoroughly disconnected from the workplace." *Muhammad v. District of Columbia Dep't of Emp't Servs.*, 34 A.3d 488, 496 & n.11 (D.C. 2012) (internal quotation marks omitted) (giving example of dying a natural death); *see also, e.g.*, *Clark*, 743 A.2d at 727 (risk is personal "when it is clear that the employment contributed nothing to the episode") (internal quotation marks omitted). Ms. Gaines's injury was certainly not "thoroughly disconnected from the workplace." The injury occurred in the workplace, as a result of a fall while Ms. Gaines was riding on a WMATA escalator on her way into the station where she was scheduled to work. Ms. Gaines submitted evidence

that it had been raining heavily and that the escalator was wet. Although the ALJ did not make an explicit finding on that point, the ALJ did find generally that Ms. Gaines's testimony was credible. Moreover, WMATA does not appear to contest that workplace conditions contributed to Ms. Gaines's fall. This case therefore does not present the question whether compensation is available for injuries arising from falls "resulting from some disease or infirmity that is strictly personal to the employee and unrelated to his [or her] employment." *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 971 A.2d 909, 913 n.1 (D.C. 2009) (internal quotation marks omitted) (leaving that question open).

Because Ms. Gaines was injured as a result of a risk that was at a minimum neutral, her injury arose "out of employment" if the injury "would not have happened *but for* the fact that conditions and obligations of the employment placed [her] in a position where [she] was injured." *Bentt*, 979 A.2d at 1232 (internal quotation marks omitted). Assuming that Ms. Gaines was not on duty at the time of the injury, the injury nevertheless arose "in the course of employment" if it occurred during "a reasonable and foreseeable activity that is reasonably related to or incidental to [the] employment or resulted from a risk created by [the] employment." *Vieira*, 721 A.2d at 583 (internal quotation marks omitted). We conclude that both of these standards are met.

Ms. Gaines's injury would not have happened but for the fact that her job required her to go to the Farragut North station in order to work a shift there. It is true, as WMATA emphasizes, that WMATA did not require Ms. Gaines to arrive early. Nor did WMATA require Ms. Gaines to use the escalator rather than some other means of entering the station. In those senses, WMATA did not require Ms. Gaines to be "in the particular place at the particular time" of the injury. *Georgetown Univ.*, 971 A.2d at 916 (internal quotation marks omitted). This court, however, has not understood the concept of "arising out of employment" so narrowly. *See, e.g.*, *Kolson*, 699 A.2d at 361 (where employee whose job requires travel "is injured while engaging in a reasonable and foreseeable activity that is reasonably related to or incidental to his or her employment," injury arises out of employment and is compensable). Moreover, so narrow an approach would lead to absurd consequences, because many workplace injuries occur in circumstances in which the employer did not dictate the precise location of the employee at the precise time of the injury. We therefore conclude that, barring countervailing considerations not present in this case, injuries that occur at the workplace as a result of a neutral risk arise out of the employment.

For similar reasons, we conclude that Ms. Gaines's injury arose in the course of her employment. The injury occurred on a WMATA escalator at the station where Ms. Gaines was assigned to work, while Ms. Gaines was heading to a WMATA-provided break room designated for the exclusive use of WMATA employees, during a scheduled break of approximately two hours between Ms. Gaines's shifts for the day. It seems to us apparent that Ms. Gaines's use of the break room during this period was reasonable and reasonably foreseeable. We also conclude that Ms. Gaines's plan to use the break room during the break was "reasonably related to or incidental to [the] employment." *Vieira*, 721 A.2d at 583 (internal quotation marks omitted).

These conclusions are consistent with the general rule that injuries that occur at the workplace when an employee is coming to or going from work are ordinarily compensable. *See, e.g.*, *Wright*, ECAB No. 88-40, 1991 DC Wrk. Comp. LEXIS 1, at *8-9 (D.C. Comp. Review Bd. Sept. 13, 1991) ("[I]njuries which occur on the employer's premises while coming and going to work are compensable . . . ."); 2 Lex K. Larson, *Larson's Workers' Compensation Law* § 13.01, at 13-3 (2018) (in general, injury "going to and from work is covered only on the employer's premises") (emphasis omitted). More broadly, these conclusions are consistent with the general rule that injuries that occur at the workplace -- whether before the

start of the day's work, after the end of the day's work, or during a break in the middle of the day's work -- are ordinarily compensable even though they are "technically outside the regular hours of employment in the sense that the worker receives no pay for that time and is in no degree under the control of the employer, being free to go where he or she pleases." *Id.* at § 21.02[1][a], at 21-3. As Larson's treatise explains, the rationale of this rule is that

> the time, although strictly outside the fixed working hours, is closely contiguous to them; the activity to which that time is devoted is related to the employment, whether it takes the form of going or coming, preparing for work, or ministering to personal necessities such as food and rest; and, above all, the employee is within the spatial limits of his or her employment.

*Id.* at 21-4.

We are not persuaded by the contrary reasoning of the CRB and WMATA. First, WMATA and the CRB emphasize the duration of Ms. Gaines's break. In essence, they reason, Ms. Gaines arrived to work at Farragut North station nearly two hours early, and WMATA should not be responsible for her injury in those circumstances. We disagree. No doubt cases might arise in which an employee came to work so early or stayed so late that the employee's presence at the workplace would be neither reasonable nor reasonably foreseeable. We see no basis in this case, however, for a conclusion that Ms. Gaines's conduct was either

unreasonable or not reasonably foreseeable to WMATA. We therefore conclude that Ms. Gaines's injury cannot reasonably be excluded from coverage based on the length of Ms. Gaines's scheduled break. We note that courts have found injuries in comparable circumstances to be compensable under workers' compensation statutes. *See, e.g.*, *Noble v. Indus. Comm'n*, 932 P.2d 804, 808-09 (Ariz. Ct. App. 1996) (injury occurred while employee was resting and having refreshments in break room fifteen minutes after his shift ended; employee's presence in break room was reasonable); *Curry v. D.A.L.L. Anointed, Inc.*, 966 N.E.2d 91, 95-96 (Ind. Ct. App. 2012) (dismissing civil action by employee because claim fell within exclusive coverage of workers' compensation statute; employee was injured while finishing meal after having arrived at work one hour and fifteen minutes early); *Carter v. Volunteer Apparel, Inc.*, 833 S.W.2d 492, 494, 496 & n.1 (Tenn. 1992) (employee was injured in designated break room approximately one hour before the start of work, where employer acquiesced in pre-work use of break room; employee's use of break room was not "so unusual or unreasonable as to not be considered an incident of her employment") (collecting cases); s*ee generally* 2 *Larson's Workers' Compensation Law* § 21.06[1][a], at 21-23 ("The course of employment, for employees having a fixed time and place of work, embraces a reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts."),

§ 21.01[1][a], at 21-3 ("Injuries occurring on the premises during a regular lunch hour arise in the course of employment . . . .") (emphasis omitted).

Second, WMATA and the CRB rely heavily on the CRB's prior decision in *Brody*, CRB No. 16-008, 2016 WL 3870155 (D.C. Comp. Review Bd. June 14, 2016). In that case, Ms. Brody was a WMATA station manager. *Id.* at *1. She was scheduled to work two shifts, both at the Metro Center station. *Id.* Her first shift ended at 10 a.m. and her second shift began at 1 p.m. *Id.* During her break, she traveled on Metro to the Columbia Heights station to have lunch. *Id.* After leaving the station to get lunch, she tripped and fell while reentering the Columbia Heights station. *Id.* The CRB held that Ms. Brody's injury was not compensable. *Id.* at *2-4. Critical to the CRB's analysis, however, was that Ms. Brody's workplace was the Metro Center station, and Ms. Brody had no employment-related reason to be at the Columbia Heights station. *Id.* at *2, *4. We express no view about whether *Brody* was correctly decided. It suffices for current purposes that *Brody* is critically different from the present case, in that Ms. Gaines's injury occurred at Farragut North station, which was her specific duty station, and Ms. Gaines thus had an employment-related reason for going to that station.

We recognize that we must defer to reasonable conclusions of the CRB. We conclude, however, that the only reasonable conclusion on this record and under our law is that Ms. Gaines's injury is compensable.

For the foregoing reasons, we vacate the decision of the CRB and remand the case for further proceedings.

*So ordered.*