*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-AA-0130

LATONYA LEE, PETITIONER,

V.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, INTERVENOR.

On Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(CRB-20-097)

(Submitted October 21, 2021                    Decided May 26, 2022)

*Krista N. DeSmyter* was on the brief for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General at the time of submission, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, filed a Statement in Lieu of Brief in support of intervenor.

*Samuel B. Scott* and *Sarah O. Rollman* were on the brief for intervenor.

Before GLICKMAN and DEAHL, *Associate Judges*, and THOMPSON,[*] *Senior Judge*.

DEAHL, *Associate Judge*: Latonya Lee worked as a bus operator for the Washington Metropolitan Area Transit Authority (WMATA). One day, while concluding the first half of a split shift—two work shifts separated by a substantial break—she exited her bus and began walking back to her car, which was parked several blocks away next to WMATA's Western Garage. She was paid "travel time" during her walk back to the Western Garage, which is where she picked up her bus at the beginning of her shift. During the walk to her car, Lee fell and injured her head, hand, knee, and wrist. She applied for disability benefits. A Department of Employment Services Administrative Law Judge (ALJ) denied Lee's claim for benefits, and the Compensation Review Board (CRB) affirmed that decision. Lee now petitions this court for review.

The pivotal issue in this case, as it was in the administrative proceedings, is whether Lee's injuries arose out of and in the course of her employment. The ALJ

---

[*] Senior Judge Thompson was an Associate Judge of the court at the time the case was submitted. On October 4, 2021, she was appointed as a Senior Judge but she continued to serve as an Associate Judge until February 17, 2022. *See* D.C. Code § 11-1502 & 1504(b)(3) (2012 Repl.). On February 18, 2022, she began her service as a Senior Judge. *See* D.C. Code § 11-1504.

denied her claim for disability benefits on the ground that they did not, the CRB affirmed on that same basis, and Lee now challenges the CRB's conclusion. We agree with Lee that her injuries arose out of and in the course of her employment.

The CRB's contrary ruling erroneously relied on the "going and coming" rule, providing that injuries sustained commuting to-and-from work are generally not compensable. But this case falls within a well-established exception to that rule where the employee is paid for her travel time, so that "the hazards of the journey may properly be regarded as hazards" of employment. *See Voehl v. Indemnity Ins. Co. of North Am.*, 288 U.S. 162, 169-70 (1933); *see also* 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 14.06(1) (2021) (collecting cases); *Vieira v. District of Columbia Dep't of Emp't Servs.*, 721 A.2d 579, 583 (D.C. 1998). There are particularly strong reasons to adhere to that view in this case, where Lee's work effectively left her stranded several blocks away from her origin point (and vehicle), so that the hazards of her return to where her shift began are better seen as part of her employment than as part of her commute away from it. We reverse the CRB's decision and remand for further proceedings.

**I.**

Latonya Lee was a bus operator for WMATA. She routinely worked split shifts, in which she was scheduled to work two blocks of time on the same day—corresponding with the morning and evening commuting hours—with a significant gap in between them. On the morning she was injured, Lee parked her car next to WMATA's Western Garage, where she picked up her WMATA bus, at around 5:30 a.m. She departed the garage in the bus and began her driving duties at around 5:48 a.m. Lee finished her morning driving duties at the Tenleytown station, about a mile away from the Western Garage, at around 10:34 a.m. Another driver was supposed to meet Lee there and relieve her, but that driver did not show up on time. Lee called her supervisors and told them that her relief driver was late, and they advised her to secure her bus and then "continue on." Lee secured the bus, as advised, and began her walk back to her car by the Western Garage.

About two blocks into her walk, Lee tripped on a curb and fell, injuring her head, knee, hand, and wrist. At the time of her fall, Lee was wearing her uniform, was required to help any WMATA patron seeking assistance, and was in the midst of twenty-five minutes of paid travel time compensating her for her return to the Western Garage. A passerby helped her up and Lee, who felt dizzy and had a knot

on her head, called her supervisors again to let them know what happened. Simone Snowden, Lee's supervisor, instructed her to return to the Western Garage to complete some paperwork. Lee did so and, once she completed the forms, she went to the hospital where she received x-rays and was prescribed pain medication for her injuries. Lee did not return to work until four months later, initially in a light-duty capacity, with her return to full-duty work three months later still.

Lee filed a claim seeking temporary total and temporary partial disability benefits, plus coverage for her related medical expenses. An ALJ heard testimony from Lee and Snowden during an evidentiary hearing, though there was no material dispute about what happened (as recounted above). The only point of dispute between Lee and WMATA is whether on these facts her injuries arose out of and in the course of her employment. The ALJ issued a Compensation Order finding that they did not, and he therefore denied Lee's claim. Applying the familiar three-step burden-shifting framework that governs disability claims, the ALJ first found that Lee had "met her initial burden of proving both an injury, and a relationship to her employment," so that there was a rebuttable presumption that her injuries were compensable. *See* D.C. Code § 32-1521(1) (2019 Repl.); *see also Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 971 A.2d 909, 916 (D.C. 2009) (citations omitted). The ALJ then found that WMATA had presented sufficient

evidence to rebut that presumption—given that Lee was on a break between shifts—so that the burden shifted back to Lee to show by a preponderance of the evidence that her injuries arose out of and in the course of her employment. *See McNeal v. District of Columbia Dep't of Emp't Servs.*, 917 A.2d 652, 656 (D.C. 2007).

In assessing the third step of whether Lee had met this burden, the ALJ determined that: (1) based on her testimony, Lee was returning to the Western Garage to retrieve her personal vehicle; (2) Lee was not required to return to the Western Garage after her first shift ended and she could have gone anywhere; (3) Lee did not engage in any work-related activities on her way to retrieve her personal vehicle; (4) the fact that Lee was wearing her uniform at the time she fell did not bring her injury within the scope of her employment; and (5) "the positional-risk doctrine," discussed further below, did not apply because WMATA gained no benefit from Lee's personal errand of retrieving her personal vehicle. Based on these determinations, the ALJ concluded that Lee was on a personal errand when she fell and that she therefore failed to prove her injuries arose out of and in the course of her employment with WMATA. The ALJ denied Lee's claim for benefits.

Lee petitioned to the CRB. She argued that her injury arose out of and in the course of her employment because while on her walk back to the Western Garage,

she was "engaging in a reasonable and foreseeable activity that [was] reasonably related to or incidental to [her] employment." Lee pointed out that when she was injured, she was walking back: (1) to her point of origin at the Western Garage, (2) during her paid travel time, (3) where she reported for duty, (4) where she was scheduled to pick up her bus for her second shift, and that (5) she was simply returning to her duty station so that her break could begin. According to Lee, because her injury would not have occurred but for the employment-related reason for her "to be where she was when she suffered her work-injury," the ALJ should have found her injuries compensable. WMATA countered that Lee's argument rested on the mistaken premise that she was returning to the Western Garage. The record evidence undermined this premise because Lee testified that she was not headed to the Western Garage but rather to her car, parked next to the garage.

The CRB affirmed. It cited Lee's cross-examination testimony that she was going to retrieve her personal vehicle, which was parked on a public street next to the Western Garage, and disagreed "that [Lee's] testimony supports the argument that she was heading to another place where she had an employment-related reason to be." The CRB also cited the going and coming rule—that "the occurrence of employee injuries sustained off the work premises, while en[]route to or from work, do not fall within the category of injuries 'in the course of employment,'" and thus

are not compensable. *Grayson v. District of Columbia Dep't of Emp't Servs.*, 516 A.2d 909, 911 (D.C. 1986) (citation omitted)). Ultimately, the CRB determined that it was "immaterial whether or not [Lee] was on a personal errand to retrieve her vehicle from a public street or was just retrieving her vehicle to leave the workplace" because substantial evidence supported the ALJ's conclusion that she failed to prove by a preponderance of evidence that her injuries arose out of and in the course of her employment. Lee now challenges the CRB's determination.

## II.

In reviewing a CRB decision, we may "reverse only if we conclude that [its] decision was arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law." *Washington Hosp. Ctr. v. District of Columbia Dep't of Emp't Servs.*, 983 A.2d 961, 965 (D.C. 2009) (citation omitted). The CRB, for its part, "must affirm a compensation order if the ALJ's factual findings are supported by substantial evidence and the ALJ's legal conclusions flow rationally from those facts." *Placido v. District of Columbia Dep't of Emp't Servs.*, 92 A.3d 323, 326 (D.C. 2014). Before this court, Lee asserts that the CRB's decision was not in accordance with the law because, based on the undisputed facts, her injuries arose (1) out of and (2) in the course of her employment.

In order to be eligible for workers' compensation, "an injury must both arise out of and occur within the course of the employment." *Bentt v. District of Columbia Dep't of Emp't Servs.*, 979 A.2d 1226, 1232 (D.C. 2009) (quoting *Kolson v. District of Columbia Dep't of Emp't Servs.*, 699 A.2d 357, 359 (D.C. 1997)). "Although 'arising out' of employment and 'arising in the course of' employment are distinct concepts, 'the two are not totally independent; frequently proof of one will incidentally tend to establish the other.'" *Gaines v. District of Columbia Dep't of Emp't Servs.*, 210 A.3d 767, 771 (D.C. 2019) (quoting *Kolson*, 699 A.2d at 360). We address each prong of the inquiry in turn.

## A.

We first ask whether Lee's injuries arose out of her employment. Whether an injury arises out employment "refers to the origin or cause of the injury." *Bentt*, 979 A.2d at 1232 (citation omitted). "All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and 'neutral' risks—i.e., risks having no particular employment or personal character." *Id.* (citation omitted). Injuries arising out of employment-related risks are "universally compensable," those arising out of personal risks are "universally noncompensable," and those arising out of neutral

risks are compensable if the obligations of the employment were a but-for cause of the injury. *Id.* (citation omitted). To illustrate these categories, if Lee were blindsided by another vehicle while driving her route, her injuries would stem from an employment-related risk; if she died a natural death while on the job, that would be the result of a personal risk; and if she were struck by lightning while on the job, the ensuing injuries would flow from a neutral risk. 1 *Larson's Workers' Compensation Law*, *supra*, §§ 4.01-4.03; *see also Muhammad v. District of Columbia Dep't of Emp't Servs.*, 34 A.3d 488, 496 n.11 (D.C. 2012) (highlighting dying a natural death and being attacked by one's mortal enemy as examples of injuries stemming from personal risks).

It is enough to resolve this case to conclude that Lee's injuries did not arise from a personal risk, but a risk that was either employment-related or, at the very least, neutral. That is because it cannot be said that Lee's injuries were "thoroughly disconnected from the workplace." *Muhammad*, 34 A.3d at 496. Her fall was not triggered by some preexisting condition unique to her and unexacerbated by her work; there was no evidence, for example, that Lee suffered from chronic vertigo that precipitated her fall. So it cannot be said that "it is clear that the employment contributed nothing to the episode." *Clark v. District of Columbia Dep't of Emp't Servs.*, 743 A.2d 722, 727 (D.C. 2000) (citation omitted). As for whether the risk

was an employment-related or a neutral one, we will assume for purposes of this case that her injuries arose from a neutral risk, which triggers a secondary question under the positional-risk test.

We apply the positional-risk test when an injury results from a neutral risk. This test requires us to "determine whether harm from an injury caused by a neutral risk arises out of one's employment" by asking whether a claimant's injuries "would not have happened *but for* the fact that conditions and obligations of the employment placed claimant in a position where [s]he was injured." *Bentt*, 979 A.2d at 1232 (citation omitted). This test provides "a liberal standard," and we have made clear—contrary to the CRB's reasoning—that an employee need not "be engaged at the time of the injury in activity of benefit to the employer." *Gaines*, 210 A.3d at 771 (citation omitted). We agree with Lee that she satisfies the positional-risk test. Once her first shift ended at the Tenleytown station, Lee was effectively stranded between the Tenleytown station and her point of origin at the Western Garage, thus putting her in "the position where she was injured" walking back to her car. *Bentt*, 979 A.2d at 1230. That renders her injuries compensable under the positional-risk test.

Our opinion in *Gaines* confirms our conclusions at both steps of the analysis above.[1]  In *Gaines*, we held that a WMATA employee suffered a compensable injury when she fell on an escalator during an unpaid two-hour break between shifts.  210 A.3d at 772-74.  Gaines's first shift had just ended at the Dupont Circle station.  *Id.* at 770.  She took the metro one stop to the Farragut North station, and briefly left the station to get a soda.  *Id.*  She was then injured coming back down the Farragut North station's escalator, where she intended to spend the remainder of her break in the station's break room before her second shift was scheduled to begin at the same station one hour and forty minutes later.  *Id.*  The CRB denied the employee's claim for disability benefits, but we vacated that decision and held her claim compensable.  *Id.* at 775.

At the first step of the analysis, we had "no difficulty" rejecting WMATA's argument that Gaines's risk of injury was personal to her simply because she was on her break, *id.* at 772, just as we have no difficulty rejecting that argument here.  Lee is on even stronger ground than the claimant in *Gaines* in one respect, because she had not even begun her unpaid break—she was injured during her paid travel time

---

[1] While Lee placed heavy reliance on *Gaines* in her application for review before the CRB, the CRB did not attempt to reconcile its decision with our opinion in that case.

during her walk back to the Western Garage.[2]  While that distinction is favorable to Lee, it makes little difference because even if she were on an unpaid break, the risk from a fall on her walk back to where she began her shift was not thoroughly disconnected from her work.

At the second step of the analysis, which we likewise reached in *Gaines* after concluding the risk was "at a minimum neutral," we concluded that Gaines's injury would not have occurred "but for the fact that her job required her to go to the Farragut North station in order to work a shift there." *Id*. at 772, 773.  The same is true here, where Lee was required to return to the Western Garage both to retrieve her car and, ultimately, to begin the second half of her split-shift.  In *Gaines* we rejected the CRB's contrary conclusion that the claim was not compensable because WMATA did not require Gaines to return to the Farragut North station hours before her shift began, to use the escalator rather than some other means of entering the station, or require her to be "in the particular place at the particular time" during her break.  *Id.* at 773.  Instead, we explained that this court "has not understood the concept of 'arising out of employment' so narrowly," "because many workplace

---

[2] In another respect, Lee is on weaker ground, for unlike the claimant in *Gaines*, Lee was not on WMATA property when she was injured.  For the reasons given throughout this opinion, that difference does not merit a different result in this case.

injuries occur in circumstances in which the employer did not dictate the precise location of the employee at the precise time of the injury." *Id.*

As in *Gaines*, the CRB took an erroneously narrow view of what it means for an injury to arise out of employment in this case, and it is one that is inconsistent with our precedents. We conclude that Lee's injuries arose out of her employment and the CRB's contrary conclusion is not in accordance with the law

**B.**

We next turn to the related question of whether Lee's injuries arose in the course of her employment. This requires us to ask whether the injuries "occurred during 'a reasonable and foreseeable activity that is reasonably related to or incidental to the employment or resulted from a risk created by the employment.'" *Gaines*, 210 A.3d at 772 (quoting *Vieira*, 721 A.2d at 583). We consider "the time, place and circumstances under which the injury occurred," including whether the injury took place "within the period of employment, at a place where the employee may reasonably be expected to be, and while he or she is reasonably fulfilling duties of his or her employment or doing something reasonably incidental thereto." *Bentt*, 979 A.2d at 1234-35 (quoting *Kolson*, 699 A.2d at 361).

Lee's injuries occurred during a foreseeable activity incidental to her employment. It was not only foreseeable that Lee would regularly need to walk back to her car at the Western Garage before she could "get where [she] had to go" on her break, but to be expected. WMATA nonetheless stresses that, on this particular day, Lee had parked next to the Western Garage (where there was on-street parking available), rather than in the garage itself, but it is hard to see how that picayune detail could possibly matter. Either way, Lee's walk back to her car was "reasonably incidental" to her employment and she was in a place where she would "reasonably be expected to be" en route back to her origin point.[3] *Bentt*, 979 A.2d at 1234-35.

Finally, the CRB erred in its application of the going and coming rule, which provides that "the occurrence of employee injuries sustained off the work premise, while en[]route to or from work," generally are not within the category of injuries "arising in the course of the employment." *Grayson*, 516 A.2d at 911. This case fits within a well-established exception to the going and coming rule, providing that "[w]hen the employee is paid an identifiable amount as compensation for time spent

---

[3] If Lee had parked several miles away from the Western Garage so that she could get a jog in at the beginning and end of each shift, and then injured herself on her jog, WMATA would have a point and we might reach a different result. But parking next to rather than in the Western Garage does not alter the foreseeability analysis in any respect.

in a going or coming trip, the trip is within the course of employment." *See 2 Larson's Workers' Compensation Law*, *supra*, § 14.06(1); *Vieira*, 721 A.2d at 583 (finding "no basis to disturb" denial of a claim where "finding that decedent was not paid for travel time has adequate factual support"); *see also Commonwealth Edison Co. v. Indus. Comm'n*, 428 N.E.2d 165, 166-68 (Ill. 1981) (being paid for travel time is "one of the most reliable ways of making a case for the compensability of a going or coming trip, and is ordinarily sufficient in itself to support such a finding") (collecting cases); *Histed v. E.I. Du Pont de Nemours & Co.*, 621 A.2d 340, 345-46 (Del. 1993) ("clear majority" of workers' compensation cases "follow the rule that a compensated trip is within the course and scope of employment").

## III.

We reverse the CRB's order and remand for further proceedings consistent with this opinion.

*So ordered.*