**Gaynell NIXON, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**No. 06–AA–1511.**

District of Columbia Court of Appeals.

Submitted June 4, 2008.

Decided Aug. 21, 2008.

---

James Quincy Butler was on the brief for petitioner.

Pastell Vann, Senior Assistant Attorney General, and Linda Singer, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General and Edward E. Schwab, then Deputy Solicitor General, were on the brief for respondent.

Before GLICKMAN and THOMPSON, Associate Judges, and NEBEKER, Senior Judge.

THOMPSON, Associate Judge:

On January 23, 1996, petitioner Gaynell Nixon sustained injuries to her foot while working for the District of Columbia Housing Authority. She subsequently claimed and received an award of tempo-

rary total disability benefits under the Comprehensive Merit Personnel Act ("CMPA").[1] In September 2004, the Department of Employment Services ("DOES") informed Nixon that it would reduce her disability benefits beginning in October 2004, on the basis of independent medical evaluations that concluded that Nixon could perform sedentary work and a labor-market survey that identified sedentary positions commensurate with Nixon's limitations. Through a request for reconsideration submitted on September 24, 2004, Nixon sought restoration of full disability benefits. In March 2001, Nixon had also requested compensation for medical expenses incurred as a result of a head injury that she sustained in a vehicle accident on February 22, 2001, while returning home from a job interview scheduled by her vocational rehabilitation counselor. In a determination dated January 6, 2006, DOES denied both of Nixon's requests. A DOES Administrative Law Judge ("ALJ") sustained the denial, and the Compensation Review Board (the "CRB") upheld the ALJ's decision.

Nixon contends that the CRB decision upholding the denial of her claim for restoration of total disability benefits was not supported by substantial evidence; that because of DOES's delay in making a decision on Nixon's request to reconsider its decision to reduce her disability benefits and a decision on her request for medical benefits related to her vehicle accident, the law requires that her requests be deemed approved; and that the CRB misapplied the law in denying her claim for medical benefits. We reject the first two of these arguments and affirm the CRB's decision as to the reduction in Nixon's disability benefits. However, we reverse, and remand for further consideration, the CRB's ruling with respect to Nixon's claim for

medical benefits in connection with her head injury.

## I. Standard of Review

■■■ We review decisions of the CRB under the "substantial evidence" standard. *Harris v. District of Columbia Office of Worker's Comp.*, 660 A.2d 404, 407 (D.C. 1995). This standard requires us to affirm the CRB's decision when: (1) the decision states findings of fact on each material, contested factual issue; (2) the findings are based on substantial evidence; and (3) the conclusions of law follow rationally from the findings. *See Sodexho Marriott Corp. v. District of Columbia Dep't of Employment Servs.*, 858 A.2d 452, 454–55 (D.C.2004). Substantial evidence is relevant evidence such as a "reasonable mind might accept as adequate to support a conclusion." *Giles v. District of Columbia Dep't of Employment Servs.*, 758 A.2d 522, 524 (D.C.2000) (quotation marks and citation omitted). Our deference to CRB decisions "extends to matters of statutory interpretation, yielding only where the [agency's] reasoning is unreasonable in light of the language of the statute, the legislative history, or judicial precedent." *Sodexho*, 858 A.2d at 455 (citation omitted).

## II. Analysis

### A. The Reduction in Nixon's Disability Benefits

■■■ In arguing that the ALJ's and CRB's decisions are not supported by substantial evidence in the record, Nixon points to the ALJ's finding that the District, Nixon's employer, met "its burden of demonstrating *a change in* [Nixon's] *medical condition* " (italics added) and to the CRB's agreement that the District "demonstrate[d] that there was a *change in*

---

1. *See* D.C.Code §§ 1–623.01 to –623.47 (2001).

[Nixon's] *medical condition* to justify a modification in her benefits." (Italics added). Nixon contends that, contrary to these findings, the medical evidence in the record "proves that there was no significant change in the condition of [her] foot that would support a change or reduction in disability benefits." She cites both her own testimony that the condition of her foot has "not improved for the better" and physician reports in the record that confirm that she reached "maximum medical improvement in 1998"—meaning, Nixon argues, that there was no change in her medical condition in 2004, the year when the District determined to reduce her benefits.

The issue before the ALJ, however, was whether there was a change in Nixon's medical condition from the time when it was previously determined that she qualified for temporary total disability benefits. The record shows that a DOES Hearings and Appeals Examiner found in October 1997 that Nixon "had not reached maximum medical improvement"[2] following her January 1996 work-related injury and that the District had failed to prove that Nixon was no longer disabled from that injury. But when DOES announced nearly seven years later, in September 2004, that it would reduce Nixon's benefits, the change on which it relied was that Nixon *had* reached maximum medical improvement in the years between 1997 and 2004, and no longer was totally disabled.

More specifically, DOES relied on an April 23, 2004 letter from Independent Medical Evaluator ("IME") Dr. Noel Gressieux, "opining that Nixon had reached maximum medical improvement" and was "capable of returning to sedentary type of work"; and on a July 8, 2004 letter from

IME Dr. Robert Smith, who agreed that Nixon had reached "maximum medical improvement with regard to orthopedic treatment and any type of surgery" and opined that, with some continued "limited treatment to control her pain syndrome on a permanent basis," she "could do a sedentary type job, full time with standing and walking limited to 10 minutes out of every hour." Both IMEs concluded that five sedentary positions identified in a Labor Market Survey and Job Search conducted by Vocational Assessment Services were commensurate with Nixon's limitations. The ALJ found that with the foregoing evidence, the District had met its burden of proof with respect to a modification of benefits and that the burden therefore shifted to Nixon to "bring forth medical evidence to show that she [was] not able to return to not only her regular duties but the identified sedentary duties as well." Nixon attempted to meet that burden by offering a March 24, 2006 letter from her treating physician, Dr. Howard Horowitz, but Dr. Horowitz corroborated the IMEs' opinions that Nixon had reached maximum medical improvement and that "there [was] no impediment to her engaging in [sedentary] employment so long as certain restrictions [regarding the amount of time she spent standing or walking per hour were] observed." We think there can be no serious disagreement that the foregoing reports constituted substantial evidence supporting the ALJ's finding and the CRB's conclusion that there was a change in Nixon's condition that justified the reduction in her benefits.

### B. Application of the "Deemed Accepted" Rule

 Nixon contends that she nevertheless is "entitled to a ruling in her favor"

---

**2.** The phrase "maximum medical improvement" refers to "[t]he point at which an injured person's condition stabilizes, and no

further recovery or improvement is expected, even with additional medical intervention." BLACK'S LAW DICTIONARY 1000 (8th ed.2004).

on her claim for restoration of disability benefits, as well as on her claim for medical benefits arising out of her vehicle accident, because the District failed to act within 30 days on her request for reconsideration of the benefit-reduction determination and similarly failed to act within thirty days on her claim for medical benefits. She relies on D.C.Code § 1–623.24(a–3)(1) (2007 Supp.), which provides that "[i]f the Mayor or his or her designee fails to make a finding of facts and an award for or against payment of compensation within 30 calendar days [of a filing of a claim for compensation], the claim shall be deemed accepted, and the Mayor or his or her designee shall commence payment of compensation on the 31st day following the date the claim was filed." In her brief to the CRB, Nixon also cited D.C.Code § 1–623.24(a–4)(2) (2007 Supp.), which provides that "[t]he Mayor or his or her designee shall provide a written decision on [a] reconsideration request within 30 days of receipt of the request. . . . [Otherwise], the claim shall be deemed accepted, and payment of compensation to the claimant shall commence on the 31st day following the date the request was filed."

DOES denied Nixon's September 24, 2004 reconsideration request on January 6, 2006, well beyond thirty days after Nixon submitted it. However, the CRB rejected Nixon's argument that her request should be deemed accepted, pointing out that section 1–623.24(a–3)(1) was not added to the CMPA until 2005, and had an effective date of April 5, 2005.[3] (The same is true of section 1–623.24(a–4)(2)). The CRB reasoned that the new law should not be applied "retroactively" or to "cases already in process" in the absence of evidence that this was the legislative intent. We need not decide whether the CRB was correct on this point in order to resolve Nixon's claim as to the reduction of her disability benefits, because we are persuaded that sections 1–623.24(a–3)(1) and –623.24(a–4)(2) apply only to claims to *initiate* payment of disability benefits, and that neither section applies to requests for reconsideration of a modification of benefits. To begin with, both section 1–623.24(a–4)(2) and section 1–623.24(a–3)(1) refer to "commenc[ing]" (rather than *reinstating* ) compensation if a decision is not made within thirty days. Moreover, by its express terms, section 1–623.24(a–4) applies to requests for reconsideration of decisions "under subsection (a) of this section"—meaning decisions made pursuant to D.C.Code § 1–623.24(a). The decisions referred to in section 1–623.24(a) are decisions on *initial* claims for disability benefits—*i.e.,* claims documented by a "report furnished by the employee's immediate supervisor," *id.,* § 1–623.24(a)(1)—rather than claims challenging a modification in benefits. It is D.C.Code § 1–623.24(d) that pertains to proposed modifications of benefits, and this section nowhere requires restoration of benefits if a decision on a request to reconsider a proposed benefit-reduction is not made within 30 days.[4] For these rea-

---

3. *See* D.C. Law 15–290, 52 D.C.Reg. 1449, 4571 (2005).

4. Furthermore, the legislative history of D.C. Law 15–290, the Act that added sections 1–623.24(a–3)(1) and –623.24(a–4)(2) to the CMPA, evinces the primary concern of witnesses and of the D.C. Council about delays in initiating payments for compensable claims. *See* Report on Bill 1–873, the "Disability Compensation Effective Administration Amendment Act of 2004," November 4, 2004, at 1 (noting that the bill proposes to amend the CMPA "to establish time periods for the District to begin payment of compensable claims . . ."). While the legislative history refers to testimony by the Disability Compensation Program Third Party Administrator about delays by the District in acting on requests to reconsider determinations to terminate or reduce compensation for lost wages, the expressed concern was about the exces-

sons, we reject Nixon's argument that the District's delayed response to her request for reconsideration of the reduction in her disability benefits entitled her to a restoration of full benefits.

◼ In resolving Nixon's petition as it relates to her claim for medical benefits, we do confront the issue of what the CRB called "retroactive" application of the "deemed accepted" rule of sections 1–623.24(a–3)(1) and –623.24(a–4)(2). Application of new legislation is retroactive if it " 'changes the legal consequences of acts completed before its effective date.' " *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 n. 23, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (quoting *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987)).[5] If Nixon's argument were that she is entitled to medical benefits because the District failed to act on her claim within thirty days after the date she filed it (which, the record indicates, was on or about March 5, 2001), she would be advocating retroactive application of sec-

tions 1–623.24(a–3)(1) and –623.24(a–4)(2)—*i.e.*, urging that the District be held liable to pay benefits on the basis of a law enacted in 2005, years after the District had already allowed thirty days to pass without resolving Nixon's claim.

◼ But the foregoing is not Nixon's argument. Her argument is that this court should give effect to sections 1–623.24(a–3)(1) and –623.24(a–4)(2) by holding that when the District allowed more than thirty days to pass after the sections' effective date (April 5, 2005) still without having resolved her claim, the District became liable to pay the claim. This approach is not truly retroactive. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." *Giant Food, Inc. v. District of Columbia Dep't of Employment Servs.*, 934 A.2d 921, 923 (D.C.2007) (quoting *Landgraf*, 511 U.S. at 269–70, 114 S.Ct. 1483).

---

sive expenditures caused by the program's "continu[ing] to pay employees during the appeals process." *Id.* at 10.

5. In *Landgraf*, the Supreme Court recognized that there is a "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence" and that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly...." *Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483. Nevertheless, the Court recognized, retroactive civil legislation may "often serve entirely benign and legitimate purposes, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law [the legislature] considers salutary," and should be given its intended scope absent constitutional restrictions. *Id.* at 267–68, 114 S.Ct. 1483.

The Supreme Court also emphasized in its opinion in *Landgraf* that whether an applica-

tion of the law is truly retroactive or instead prospective is not always easy to determine. "[D]eciding when a statute operates 'retroactively' is not always a simple or mechanical task." *Id.* at 268, 114 S.Ct. 1483. "Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity." *Id.* at 270, 114 S.Ct. 1483. Moreover, there is an "apparent tension" between "seemingly contradictory statements found in [the Court's] decisions concerning the effect of intervening changes in the law," *i.e.*, on the one hand, the axiom that "retroactivity is not favored in the law;" and, on the other hand, the rule that a court should "apply the law in effect at the time it renders its decision" (and the related principle that a "new 'remedial' statute[ ], like [a] new 'procedural' one[ ], should presumptively apply to pending cases" to vindicate its purpose more fully). *Id.* at 263, 264, 273, 285 n. 37, 114 S.Ct. 1483 (quotation marks and citations omitted).

Of course, a problem with the approach that Nixon urges is that it deviates from the statutory language, which requires resolution of new claims within thirty days after they are *filed*, but does not require resolution of claims that were already pending upon enactment of sections 1–623.24(a–3)(1) and –623.24(a–4)(2) within thirty days after the sections' effective date. That is not necessarily a fatal problem; if we thought it consistent with the legislative intent, we might reasonably give effect to sections 1–623.24(a–3)(1) and –623.24(a–4)(2) by applying them just as Nixon urges. *Cf. Thorpe v. Housing Auth. of Durham,* 393 U.S. 268, 272, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) (holding that even though Housing Authority had already instituted eviction proceedings against a tenant and therefore could not comply literally with a subsequently-promulgated HUD rule requiring that *"before instituting an eviction proceeding* local housing authorities ... [must] inform the tenant 'in a private conference or other appropriate manner' of the reasons for the eviction and give him 'an opportunity to make such reply or explanation as he may wish,'" Housing Authority was required, before proceeding further with eviction efforts, to afford the tenant the notice and opportunity to reply specified in the new regulation, which was "designed to insure a fairer eviction procedure in general") (italics added). We conclude, however,

that we should not require DOES to apply the "deemed accepted" rule to Nixon's claim.

■ We are guided by the principle that "legislation must be considered as addressed to the future, not to the past ... unless such be the unequivocal and inflexible import of the [statutory] terms." *Mayo v. District of Columbia Dep't of Employment Servs.,* 738 A.2d 807, 811 (D.C.1999) (internal punctuation marks and citations omitted). The Council did not state in the text of sections 1–623.24(a–3)(1) and –623.24(a–4)(2) or in the legislative history of D.C. Law 15–290 what, if any, effect it intended sections 1–623.24(a–3)(1) and –623.24(a–4)(2) to have on claims that were already pending upon their effective date.[6] Thus, we have no unequivocal statement of the Council's intent. In addition, we are mindful that at least some Council members expressed reluctance about the new deadlines imposed by the bill that became D.C. Law 15–290, out of concern about whether the District realistically would be able to comply with them.[7] Passage of the legislation perhaps entitles us to conclude that some of these concerns were assuaged, but it certainly "does not tell us precisely where the compromise was struck," *Landgraf,* 511 U.S. at 256, 114 S.Ct. 1483, or give us confidence that applying the "deemed accepted" rule to claims already pending upon enactment of

**6.** By contrast, we note, in other provisions of the CMPA, the Council did prescribe remedies to take effect within a specified period after the legislation's effective date. *See, e.g.,* D.C.Code § 1–610.61(7) ("Each employee appointed without a break in service to a position in the Executive Service from another position in the District government, on or after the first day of the first pay period *after enactment of this section* shall have his or her accrued annual leave balance, up to a maximum of 240 hours, transferred to an escrow account for use at the discretion of the employee until exhausted") (italics added). The

fact that the Council tied the thirty-day deadlines and "deemed accepted" relief of sections 1–623.24(a–3)(1) and –623.24(a–4)(2) only to claim-filing dates, and not to the effective date of the legislation, weighs against a conclusion that the Council specifically intended to afford relief with respect to already-pending claims.

**7.** *See* Report on Bill 1–873, the "Disability Compensation Effective Administration Amendment Act of 2004," November 4, 2004, at 15.

sections 1–623.24(a–3)(1) and –623.24(a–4)(2) is consistent with the Council's intent.[8] In addition, sections 1–623.24(a–3)(1) and –623.24(a–4)(2) are "plainly not the sort of provision[s] that must be understood to operate retroactively because a contrary reading would render [them] ineffective," *Landgraf*, 511 U.S. at 286, 114 S.Ct. 1483; even if they afford relief only with respect to claims filed after their effective date, they alleviate in part the problem of delayed action on claims. Finally, although the CRB's analysis of the issues of retroactivity and the application of sections 1–623.24(a–3)(1) and –623.24(a–4)(2) to "cases already in process" when D.C. Law 15–290 was enacted was somewhat conclusory, we cannot say that the CRB's conclusion that the "deemed accepted" rule should not be applied to such cases is unreasonable in light of the statutory language or legislative history. Accordingly, we affirm the CRB's ruling that the law does not require that Nixon's claim for medical benefits be deemed accepted.

### C. The Claim for Medical Expenses Arising Out of Petitioner's Accident While Returning Home from an Employer–Mandated Job Interview

■ In rejecting Nixon's claim that she was entitled to medical benefits for expenses arising from her February 2001 vehicle accident, the ALJ reasoned that "meeting one[']s [attendance at job interview] responsibilities under vocational rehabilitation so as to maintain one[']s disability payments does not constitute employment within the meaning of the Act." The ALJ also reasoned that even "[i]f attending job interviews is seen as Claimant's job, the injury occurred away from the job site," meaning that under the so-called "going and coming rule," "Claimant must be viewed as any other worker who while traveling home is broadsided ... and is injured. The ... law in this jurisdiction does not recognize that injury as having been sustained in the course of employment...." The CRB upheld this ruling, reasoning that the injury did not occur while Nixon "was about the [Employer's] business at a time or place where [Nixon] was expected to perform [ ]' her work duties." The CRB also rejected Nixon's argument that "travel was part of her work making her a traveling employee," reasoning that there was no evidence that "traveling away from her worksite was part of her duties."

■ As the ALJ and CRB recognized, the CMPA's provision for compensation for disability of an employee "resulting from personal injury sustained while in the performance of his or her duty," D.C.Code § 1–623.02, has been constructed as requiring that the injury arise both "out of and in the course of employment." *McCamey v. District of Columbia Dep't of Employment Servs.*, 947 A.2d 1191, 1200 (D.C.2008) (noting that the District of Columbia Workers' Compensation Act and the CMPA are conceptually close, and that case law under one act is "informative" as to the other, *id.* at 1199); *see also Grayson v. District of Columbia Dep't of Employment Servs.*, 516 A.2d 909, 911 (D.C.1986). The ALJ and CRB also correctly recognized that, in this jurisdiction, "the general rule [is] that the occurrence of employee injuries sustained off the work premises, while en route to or from work, do not fall

---

**8.** As the Supreme Court observed in *Landgraf*, "[s]tatutes are seldom crafted to pursue a single goal, and compromises necessary to their enactment may require adopting means other than those that would most effectively pursue the main goal. A legislator who supported a prospective statute might reasonably oppose retroactive application of the same statute." 511 U.S. at 286, 114 S.Ct. 1483.

within the category of injuries 'in the course of employment.' " *Grayson*, 516 A.2d at 911 (quoting 1 A. Larson, *The Law of Workmen's Compensation*, § 6.10 (1984)). This rule, referred to as the "going and coming" rule, *Kolson v. District of Columbia Dep't of Employment Servs.*, 699 A.2d 357, 359 (D.C.1997), admits of an exception in cases where "travel is an integral part of [the] job[ ], ... as differentiated from [where] employees [ ] commute daily from home to a single workplace," an exception justified on the basis that "[t]raveling employees' travel is deemed a work-related risk." *Id.* at 360 (citation omitted).

We find no fault with the ALJ's and CRB's reasoning that traveling to and from and attending the vocational-rehabilitation job interview were not part of Nixon's work and that Nixon was not a "traveling employee" at the time of her vehicle accident. Nor do we disagree with their conclusion that the medical expenses Nixon incurred for treatment of the injuries she sustained upon leaving the job interview were not compensable under the limited exception announced in *Kolson* (*i.e.*, that "the traditional meaning of 'arising in the course of the employment' generally is not followed in traveling employee cases,)" 699 A.2d at 361. However, as we go on to explain, we conclude that we must remand this matter for further consideration by the administrative agency, because neither the ALJ nor the CRB considered whether an additional departure from the "the traditional meaning of 'arising in the course of the employment' " might be warranted here—*i.e.*, whether Nixon's claim might be covered as involving what Professor Larson refers to as a "quasi-course of employment" injury. *See* 1 A. LARSON, LARSON'S WORKERS' COMPENSATION LAW, § 10.05 (2008).

Professor Larson's treatise describes some jurisdictions' acceptance of claims for injuries incurred in connection with recognition of "quasi-course of employment" activities, *i.e.*, "activities undertaken by the employee following upon his or her injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury." *Id.* (citing, *inter alia, Palmer v. New York State Div. for Youth*, 2 A.D.3d 1123, 768 N.Y.S.2d 694 (N.Y.App.Div.2003)); *see also* Larson's Workers' Compensation, § 10.07 ("Accident During Trip to Doctor's Office," citing, *inter alia, Freeman v. Texas Comp. Ins. Co.*, 603 S.W.2d 186 (Tex. 1980); *Woodrum v. Premier Auto Glass Co.*, 103 Ohio App.3d 530, 660 N.E.2d 491 (1995)); and *Laines v. Workmen's Comp. App. Bd.*, 48 Cal.App.3d 872, 122 Cal.Rptr. 139 (1975)). In *Palmer*, the claimant was injured in a car accident on her way to meet with her attorney and the compensation carrier for a review of her continuing eligibility for compensation benefits. 768 N.Y.S.2d at 694. The New York court held that the claimant's new injury was a compensable consequence of her original injury because it was "undisputed that [the] claimant's purpose for traveling to the meeting was wholly related to her claim and, further, that said meeting was scheduled at the carrier's request and for its sole benefit[,] ... [and] that [the] claimant would *not* have incurred her injuries had the carrier not requested the meeting." *Id.*

In *Freeman*, the decedent was killed in a car accident after leaving the location of a polygraph test that his employer had directed him to take. 603 S.W.2d at 191. The Texas court held that because the

employer had directed the decedent to make the trip, his beneficiaries were entitled to benefits under an exception to the general rule of noncompensability of travel injuries. 603 S.W.2d at 191. In *Woodrum*, the Ohio court held that the claimant was entitled to benefits for injuries he sustained while returning from an independent medical examination ordered by the Bureau of Workers' Compensation to determine his eligibility to continue to receive benefits from a prior, work-related injury, reasoning that claimant's "injuries were directly and proximately caused by circumstances that arose out of his employment" and that "the obligations necessitated by [claimant's original] injuries in order to participate in the Workers' Compensation Fund, *directly resulted* in his new injuries." 660 N.E.2d at 493. And in *Laines*, the California court held that where the claimant's employer directed claimant to seek medical treatment for a workplace injury and claimant was injured in an accident while en route to required medical examination, the injury "should be held to be an injury arising out of and in the course of employment" and was compensable. 48 Cal.App.3d at 877, 122 Cal. Rptr. 139.

Here, the ALJ accepted Nixon's testimony that her DOES claims examiner told her "that she had to show up [for the February 22, 2001 job interview set up by her vocational rehabilitation counselor] notwithstanding the weather conditions," and notwithstanding her request that the interview be rescheduled in light of those conditions. Nixon testified that in the snow-related accident that occurred as she was driving home from the interview, she sustained a head injury that caused her to undergo months of "cognitive rehabilita-

tion" and to incur related medical bills. These facts raise an issue of whether Nixon's head injury should be compensable as an injury arising out of her employment and sustained in the "quasi-course of [her] employment." The CRB did not address this issue because it narrowly read Nixon's argument as a claim that she was injured in the course of her employment and that her medical expenses should be covered under the "traveling employee" doctrine. However, as we construe Nixon's argument, both to the CRB and to this court, her point was broader than that. She asserts that her injury occurred "within the scope of employment" because "it would have never occurred but for her employment-created obligation" to participate in scheduled vocational rehabilitation activities.[9]

We express no view as to whether Nixon's medical benefits claim is compensable under the CMPA, but instead remand the case so that DOES may consider in the first instance what appears to be a question of first impression in this jurisdiction: whether medical benefits are available for injuries that a claimant sustains while engaged in an activity required as a part of the disability benefits program. *See Smith v. District of Columbia Dep't of Employment Servs.*, 934 A.2d 428, 437 (D.C.2007) ("Ordinarily, ... this court will not attempt to interpret the agency's statute until the agency itself has done so. Instead, we will remand to permit the agency to engage in the necessary analysis of the legislation it is charged with carrying out. In particular, a dispute over the *coverage* of the law—such as we have in the case now before us—is quintessentially a decision for the [agency] to make in the first instance, involving, as it does, a situa-

---

9. *See* D.C.Code § 1–623.04; *see also* 7 DCMR § 3132.6(d) (2008) (providing that eligibility for benefits may be affected by an employee's "failure to participate in vocational rehabilitation").

tion where an agency is delegated broad authority to administer a statutory scheme") (citations omitted); *see also Howard Univ. Hosp. v. District of Columbia Dep't of Employment Servs.*, 952 A.2d 168, 181 (D.C.2008) ("we should not defer to the CRB's construction when the Board has not included in its calculus ... the analogous authorities from other jurisdictions, several of them based on Professor Larson's analysis. Instead, we remand the issue to the CRB for reconsideration in light, *inter alia*, of the authorities cited herein"); *Bell Atlantic–Washington, D.C., Inc. v. PSC*, 767 A.2d 262, 267 (D.C.2001) ("the Commission has not addressed explicitly the interpretive issues that we perceive. Absent any sign that the Commission recognized those issues and actually did undertake to resolve them, we are reluctant to assume an implicit resolution based solely on the Commission's ultimate decision in this case.... We think the soundest course is to remand this matter so that the Commission may address the issues we have identified in further proceedings not inconsistent with this opinion"); *Council of the District of Columbia v. Clay*, 683 A.2d 1385, 1389 (D.C.1996) ("We have ... generally declined to defer to the administrative construction of a statute where the agency has failed to ... identify the question of construction being addressed") (citations omitted).[10]

For the foregoing reasons, we affirm the CRB's decision as to the reduction in Nixon's disability benefits. We reverse, and remand for further proceedings not inconsistent with this opinion, the CRB's ruling with respect to Nixon's claim for medical benefits arising out of her 2001 vehicle accident.

*So ordered.*

10. At the evidentiary hearing, the District sought to establish that Nixon's claim for medical benefits should be rejected because her insurance company has already indemnified her for her medical expenses. If DOES should determine upon remand that Nixon's medical expenses are compensable under the CMPA, the agency may then consider what if any bearing the evidence about other insurance has on the disposition of Nixon's claim.

Without elaboration, Nixon requests that this court order an award in her favor of "Reasonable Attorneys fees and cost of this action." But D.C.Code § 1–623.27(b)(1) provides for an award of attorney's fees (in a compensation order) upon "successful prosecution" of a claim, *i.e.*, upon obtaining an award of compensation or reinstatement of benefits. At this juncture, there is no basis for the relief Nixon requests.