*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 21-CV-389 & 21-CV-475

PUBLIC MEDIA LAB, INC. & MANIFOLD PRODUCTIONS, INC., APPELLANTS,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CAB-17-21)

(Hon. Shana Frost Matini, Trial Judge)

(Argued January 18, 2022                    Decided June 9, 2022)

*Jason B. Torchinsky*, with whom *Jonathan P. Lienhard*, *Edward Wenger*, and *Dennis W. Polio*, were on the brief for appellant Public Media Lab, Inc.

*Edward D. Greim*, with whom *Matthew R. Mueller*, and *Christopher T. Craig*, were on the brief, for appellant Manifold Productions, Inc.

*Thais-Lyn Trayer*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, and *Loren L. AliKhan*, Solicitor General at the time, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for appellee.

Before EASTERLY and DEAHL, *Associate Judges*, and THOMPSON,[*] *Senior Judge*.

---

[*] Senior Judge Thompson was an Associate Judge of the court at the time of argument. On October 4, 2021, she was appointed as a Senior Judge but she continued to serve as an Associate Judge until February 17, 2022. *See* D.C. Code §

(continued…)

THOMPSON, *Senior Judge*: The District of Columbia (the "District"), through its Attorney General, brought suit against appellants Public Media Lab, Inc. ("PML") and Manifold Productions, Inc. ("Manifold"), alleging violations by PML of the District of Columbia Nonprofit Corporations Act ("NCA")[1] and PML's failure to comply with various corporate-governance requirements, and seeking judicial dissolution of PML and imposition of a constructive trust over non-profit funds awarded to Manifold by PML. Appellants, who partner together to produce documentary films about various historical and political figures, brought a special motion to dismiss pursuant to the District of Columbia Anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") Act.[2] The trial court denied appellants' motion, ruling that the District's suit could proceed, and appellants timely appealed that ruling. While this appeal was pending, the Council of the District of Columbia (the "Council") amended the Anti-SLAPP Act, initially through emergency legislation, exempting suits brought by the District of Columbia from its coverage and applying the new legislation to all pending cases.

---

(…continued)

11-1502 & 1504(b)(3) (2012 Repl.). On February 18, 2022, she began her service as a Senior Judge. *See* D.C. Code § 11-1504.

[1] *See* D.C. Code § 29-401 *et seq.* (2013 Repl.).

[2] *See* D.C. Code § 16-5501 *et seq.* (2021 Supp.).

The District argues that this intervening legislation moots the appeal, while appellants contend that the amendment is invalid as applied to this case. We conclude that the new legislation is valid and deprives this court of the ability to grant the relief appellants seek. We therefore dismiss the appeal as moot (thereby leaving to stand the trial court's denial of appellants' special motion to dismiss) and remand for further proceedings.

## I. Factual & Procedural Background

PML is a nonprofit, 501(c)(3) corporation that was organized in 2007 under the laws of the District of Columbia to receive and award grant funding for the creation of educational documentary films and to engage in other charitable and educational activities. Manifold is a for-profit media production company that has received funding from PML to produce documentary films. The two entities have the same business address. At all relevant times, Michael Pack was the President, CEO, and a member of the Board of PML and the sole owner of Manifold.

On January 5, 2021, the Attorney General of the District of Columbia filed a lawsuit against PML and Manifold in the Superior Court, pursuant to its authority under common law and the NCA, alleging that PML had "fail[ed] to comply with District law, its corporate requirements, and its nonprofit purposes . . . ." The complaint alleges a series of transactions between PML and Manifold that violate the prohibition against private inurement. According to the complaint, all but one of the grants PML has awarded went to Manifold; more specifically, the complaint alleges that the grants to Manifold totaled more than $4 million and represent 99.3% of the total grant-funding PML has issued and 94.8% of its total revenues. The complaint asserts that the awards to Manifold violated D.C. Code § 29-404.40(a), which prohibits a nonprofit organization from distributing "any part of its assets, income, or profits to its . . . directors . . . or officers," and as well contravened PML's articles of incorporation, which prohibit private inurement. Additionally, the complaint alleges that in making grant awards to Manifold, PML failed to comply with D.C. Code § 29-406.70(a) and PML's own governing rules that establish disclosure and board-authorization requirements for conflicting-interest transactions. The complaint further alleges that from 2008 to 2016, PML did not disclose the awards as transactions with interested persons, as it was required to do on its annual IRS Form 990.

The complaint also alleges corporate-governance violations related to PML's managing structure. It asserts first that PML's board of directors has not held any official meetings or maintained records of actions taken by the board since 2008, in violation of D.C. Code § 29-406.01, which requires a nonprofit to have a board of directors to oversee its activities and affairs; D.C. Code § 29-413.01, which sets record-keeping requirements; and PML's by-laws, which provide for board management and annual board meetings. Second, the complaint alleges that for each year from 2008 through 2018, PML either listed only Mr. Pack as an officer in its tax reporting or did not list any officers, in violation of D.C. Code § 29-406.40(a), which requires nonprofit organizations to have at least two officers to divide responsibility for managing the corporation and its financial affairs. Similarly, PML's governing documents provide for six officer positions to be elected at each annual meeting.

Finally, the complaint alleges that PML has acted contrary to its nonprofit purpose, *see* D.C. Code § 29-403.01(a), by failing to conduct its grant-making program in the manner detailed in its application to the IRS seeking nonprofit status. Specifically, the complaint states that "PML projected it would issue grants, averaging between $100,000 and $200,000 per grant, with about 'six or seven small grants' its first year," and gradually increasing to twenty to twenty-five

grants per year. PML also described a "comprehensive and competitive grant application and selection process, as well as disclosure and accounting requirements on grant recipients," which included, among other things, "an open solicitation basis and formal review process," issuing requests for proposals, and "[r]equiring recipients to provide PML with accountings for the uses of such grants . . . ." The complaint alleges that PML did not execute any of these activities. Instead, according to the complaint, PML's only disclosed expenses have been "grants to Manifold and infrequent nominal banking, legal, and accounting fees," and thus it has functioned "only as a funding mechanism for Manifold and Pack, not for a nonprofit purpose."

Citing all the foregoing acts and omissions, the complaint alleges that "PML acted as a conduit to raise tax-exempt funds for the sole and primary benefit of Manifold" and "serves no purpose other than to illegally pass along tax-exempt funds to Manifold, a for-profit entity." The complaint further asserts that PML's alleged failure "to safeguard [its] nonprofit assets" and "meet its fiduciary duties in ensuring that nonprofit funds are spent in ways that benefit the public, avoid waste[,] and are in accordance with PML's charitable purposes," in addition to entailing violations of the NCA and PML's own governance requirements, also "violated the responsibilities of a charitable corporation under common law." The

Attorney General seeks judicial dissolution of PML and imposition of a constructive trust over funds Manifold received from PML on the grounds that, in awarding those funds, PML "exceeded or abused . . . the authority conferred upon it by law" and "continued to act contrary to its nonprofit purposes . . . ." D.C. Code § 29-412.20(1)(1)(B)-(C).

In response to the complaint, PML and Manifold filed a Special Motion to Dismiss under the Anti-SLAPP Act. *See* D.C. Code § 16-5502(a). The trial court denied the motion in a written order dated June 7, 2021, finding that appellants had failed to make the required prima facie showing that the Anti-SLAPP Act applied. *Id.* § 16-5502(b). While appellants' appeal of the trial court's denial of the special motion to dismiss was pending, the Council passed legislation — through a series of emergency and temporary amendments — that exempts actions brought by the District from the Anti-SLAPP Act.[3] Appellants challenge the validity of this

---

[3] To date, three separate pieces of legislation have been enacted: the Anti-SLAPP Emergency Amendment Act of 2021, D.C. Act 24-208, 68 D.C. Reg. 12193 (Nov. 19, 2021) (effective November 8, 2021, until February 6, 2022); the Anti-SLAPP Congressional Review Emergency Amendment Act of 2022, D.C. Act 24-309, 69 D.C. Reg. 643 (Jan. 28, 2022) (filling gap between expiration of first emergency act and completion of congressional review period of temporary act); and the Anti-SLAPP Temporary Amendment Act of 2021, D.C. Act 24-274, 69 D.C. Reg. 209 (Jan. 14, 2022) (now D.C. Law 24-80, 69 D.C. Reg. 2024 (Mar. 18, 2022) (effective February 24, 2022, until October 7, 2022). The District of

(continued…)

legislation on several grounds and maintain that the trial court erred in holding that the Anti-SLAPP Act does not apply.

## II. The Anti-SLAPP Act and the Emergency and Temporary Amendments

The Anti-SLAPP Act, D.C. Code § 16-5501 *et seq.* (2021 Supp.) (the "Act"), protects the targets of meritless litigation that is "aimed to punish or prevent the expression of opposing points of view" by creating certain procedural tools, including a special motion to dismiss. *Saudi Am. Pub. Rels. Affs. Comm. v. Inst. for Gulf Affs.*, 242 A.3d 602, 605 (D.C. 2020) (quoting *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1226-27 (D.C. 2016)). Under the Act, the party seeking dismissal (usually the defendant) must "make[] a prima facie showing that

---

(…continued)
Columbia Home Rule Act authorizes the Council to pass emergency legislation, which takes effect immediately upon enactment without congressional review and lasts up to ninety days, "[i]f the Council determines, by a vote of two-thirds of the members, that emergency circumstances make it necessary . . . ." D.C. Code § 1-204.12(a) (2016 Repl.). When the Council approves emergency legislation, its Rules also authorize the Council to consider substantially similar temporary legislation that bypasses committee referral and is valid for 225 days after congressional review. Rules of Organization and Procedure for the Council of the District of Columbia, Council Period 24, Rule 413, 68 D.C. Reg. 228, 292 (Jan. 8, 2021).

the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest . . . ." D.C. Code § 16-5502(b). If defendants succeed in making this showing, the burden then shifts to the plaintiff to "demonstrate[] that the claim is likely to succeed on the merits" in order to avoid dismissal. *Id.* The filing of a special motion to dismiss under the Anti-SLAPP act stays discovery (other than "targeted discovery" that "will enable the plaintiff to defeat the motion"), and the court must hold an expedited hearing on the motion. D.C. Code § 16-5502(c)-(d).

As noted above, while this appeal was pending — and after the trial court had ruled on appellants' special motion to dismiss — the Council passed emergency and temporary legislation amending D.C. Code § 16-5505 to exempt actions brought by the District of Columbia from the Anti-SLAPP Act. Permanent legislation was also introduced along with the initial emergency and temporary acts and is currently under review by the Committee on Judiciary and Public Safety. Anti-SLAPP Amendment Act of 2021, D.C. Bill 24-493, 68 D.C. Reg. 11702 (Nov. 5, 2021). The amendments expressly apply to claims pending as of November 8, 2021, the effective date of the first emergency act. Anti-SLAPP Temporary Amendment Act of 2021 § 2(b). In concert with this legislation, the Council also passed the Anti-SLAPP Emergency Declaration Resolution of 2021,

stating that "the Council did not intend for [the Anti-SLAPP Act] to be used against actions brought by the District." D.C. Resolution 24-287 § 2(b), 68 D.C. Reg. 11960 (Nov. 12, 2021). In justifying emergency action, the Council observed that "[r]ecently, defendants that have been the subject of lawsuits by the Attorney General have indicated that they plan to use the Anti-SLAPP Act to frustrate and delay actions brought on behalf of the District," which "is only expected to increase as these matters continue to gain publicity." *Id.* § 2(c). The Council thus declared that "[a]n amendment to the Anti-SLAPP Act is necessary to clarify the Council's original intent in the Anti-SLAPP Act, and prevent significant delays in cases of serious public import brought by the District." *Id.* § 2(d).

### III. The Parties' Arguments

The District argues that this appeal should be dismissed as moot since actions brought by the District are now exempt from the Anti-SLAPP Act, "there is no longer any basis to reverse the Superior Court's denial of defendants' special motion to dismiss under the Anti-SLAPP Act," and "the newly enacted emergency legislation has eliminated any basis for reversing the Superior

Court and granting the dismissal that defendants seek under the Anti-SLAPP Act." The District cites this court's recognition that "[w]hen a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted," as is the case here. *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 176 (D.C. 2008) (internal quotations omitted). The District further cites our case law that "an event that renders relief impossible or unnecessary also renders that appeal moot." *Thorn v. Walker*, 912 A.2d 1192, 1195 (D.C. 2006) (internal quotations omitted).[4] It notes that we have previously held a case to be moot based on intervening legislation that "deprived the trial court of the ability to grant" the relief sought. *District of Columbia v. Am. Univ.*, 2 A.3d 175, 181 (D.C. 2010).

Appellants counter that the emergency amendment exceeded the Council's authority under the District of Columbia Home Rule Act; that dismissing the appeal on the basis of the amendment would contravene Due Process; and that the emergency amendment amounts to an unconstitutional bill of attainder and violates the Ex Post Facto Clause. We address each of these points in turn.

---

[4] Though we are "not bound strictly by the 'case or controversy' requirements of Article III of the U.S. Constitution, this court does not normally decide moot cases" in which "the legal issues presented are no longer 'live' or when the parties lack a legally cognizable interest in the outcome." *Cropp v. Williams*, 841 A.2d 328, 330 (D.C. 2004).

## A. District of Columbia Home Rule Act

We address first appellants' contention that the Council exceeded its authority under the Home Rule Act in passing the legislation in question as "emergency" legislation.[5]  While the Home Rule Act itself does not define "emergency circumstances," the Council Rules define an "emergency" as "a situation that adversely affects the health, safety, welfare, or economic well-being of the District, its residents, [or] its businesses," such that delay resulting from the ordinary legislative process "would adversely affect the circumstances which the legislation is intended to protect."  Rules of Organization and Procedure for the Council of the District of Columbia, Council Period 24, Rule 412(b), 68 D.C. Reg. 228, 291 (Jan. 8, 2021).  Our court has recognized that, when reviewing emergency legislation, we owe "substantial deference" to the Council's determination that

---

[5] In another pending appeal, *Banks v. Hoffman*, No. 20-CV-318, the court has been presented with a different Home Rule Act challenge to the Anti-SLAPP Act.  Specifically, the court has been asked to decide whether the Council's creation of the Act's special motion to dismiss violated the Home Rule Act since, the plaintiffs/appellants assert, it contravenes the Home Rule Act provision codified at D.C. Code § 11-946 (2012 Repl.), that generally requires the Superior Court to "conduct its business according to the Federal Rules of Civil Procedure," which recognize no such motion or accompanying discovery limitations or burden-shifting.  We do not consider that issue here or imply anything about its eventual resolution, but conceivably it could be dispositive of this case as well.  It was not, however, briefed by the parties.

emergency circumstances exist, and "seek only to assure ourselves that the act is facially valid, *i.e.*, consistent with Council legislative authority in partnership with Congress." *Am. Fed'n of Gov't Emps. v. Barry*, 459 A.2d 1045, 1051 (D.C. 1983).

Appellants cite a number of cases in which this court has upheld emergency legislation and appear to imply that, by comparison, the circumstances here do not justify the Council's determination of an emergency. *See, e.g.*, *Atchison v. District of Columbia*, 585 A.2d 150, 152 (D.C. 1991) (concluding that interpretation of Overnight Shelter Act as requiring government to provide shelter regardless of budget constraints, thus exposing the District to civil contempt liability and fines for failure to do so, warranted clarification of Council's intent in face of budget crisis); *United States v. Alston*, 580 A.2d 587, 596-97 (D.C. 1990) (increase in homicides warranted emergency legislation authorizing preventative pretrial detention and enhanced penalties); *Am. Fed'n of Gov't Emps.*, 459 A.2d at 1049-51, 1050 n.9 (law requiring pay increase that could be construed to apply to District employees and would result in budget shortfall warranted emergency legislation; "emergency" need not follow from "unforeseen circumstances").

The budgetary and public-safety circumstances that occasioned the emergency legislation discussed in foregoing cases arguably were of a more typical

emergent nature than the circumstance that caused the Council to act here. However, given the Council's expressed concern about some defendants' plan to use the Anti-SLAPP Act "to frustrate and delay actions brought on behalf of the District," and about the need to avert "frivolous and malicious" misuse of the Act and thus "prevent significant delays in cases of serious public import brought by the District," Anti-SLAPP Emergency Declaration Resolution of 2021 §2(c)-(d), we cannot say that the Council's declared emergency fails to pass the "facially valid" test.[6]  Appellants have not pointed us to a single case, nor have we found one, where we have invalidated emergency legislation on this type of challenge. Instead, we have consistently reiterated our deferential approach, particularly where the emergency legislation is (as it was here) accompanied by proposed temporary legislation (that was submitted for congressional review on January 11, 2022) and permanent legislation and thus covers only the period necessary for more permanent legislation to make its way through the legislative process and the congressional review period.  *See Atchison*, 585 A.2d at 157.  Indeed, the temporary act has already completed congressional review and is law, *see* D.C. Law 24-80, 69 D.C. Reg. 2024 (Mar. 18, 2022), and the permanent legislation has

---

[6] We note that the legislative history contains references to nationwide use of such tactics to thwart enforcement actions.  *See* Request to Agendize Measures for November 2, 2021 Legislative Meeting, Memorandum from Councilmember Charles Allen (citing "large oil companies['] attempt[] to use the anti-SLAPP laws to stop state enforcement cases across the country").

been submitted for Committee review. Therefore, we have no basis for second-guessing the Council's "emergency" determination on the ground that it was in reality "an attempt by the Council to avoid congressional review . . . ," *Alston*, 580 A.2d at 595, or "a dodge to avoid the more onerous procedural requirements for enacting permanent legislation." *Atchison*, 585 A.2d at 153.

### B.      Constitutional Challenges

Appellants also unpersuasively challenge the emergency legislation on several constitutional grounds. First, they argue that retroactive application of the amendment — which on its face applies to "any claims pending" — presents due process concerns.[7] We have recognized that "retroactive civil legislation is subject to only 'modest' constitutional limits." *Holzsager v. District of Columbia Alcoholic Beverage Control Bd.*, 979 A.2d 52, 57 n.5 (D.C. 2009) (quoting *Beretta*, 940 A.2d at 179)). Retroactivity often serves legitimate purposes, including "'to respond to emergencies, to correct mistakes, to prevent

---

[7] It is true that statutes "will not be construed to have retroactive effect unless their language requires [that] result," but a clear legislative intent to apply a new law to pending cases governs over any "presumption against retroactive legislation." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 264-65, 273 (1994)).

circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law [the legislature] considers salutary,' and should be given its intended scope absent constitutional restrictions." *Nixon v. District of Columbia Dep't of Emp't Servs.*, 954 A.2d 1016, 1022 n.5 (D.C. 2008) (brackets in original) (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 267-78 (1994)). Here, retroactive application of the Anti-SLAPP Amendment Act "is supported by a legitimate legislative purpose furthered by rational means," *Beretta*, 940 A.2d at 174 (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984)), namely to "prevent significant delays in cases of serious public import brought by the District." Anti-SLAPP Emergency Declaration Resolution of 2021 § 2(d).

Furthermore, contrary to appellants' assertion, the amendment does not contravene due process by "randomly deny[ing] potential litigants use of established adjudicatory procedures." *Beretta*, 940 A.2d at 175 (internal quotations and brackets omitted) (discussing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 427-29 (1982)). The Council has the "authority to make substantive changes affecting claims or causes of action," including "'creat[ing] substantive defenses or immunities for use in adjudication—or to eliminate its statutorily created causes of action altogether'" after a cause of action has accrued. *Id.*

(quoting *Logan*, 455 U.S. at 432); *see also id.* at 176 (explaining that "the correct constitutional distinction is . . . between causes of action that have reached final, unreviewable judgment—and in *that* sense have vested—and all others, pending and future, which may be modified by rationally grounded retroactive legislation"). It therefore follows that the Council could remove the ability to use a defensive procedural mechanism without depriving appellants of their due process rights. So long as an action has not "reached final, unreviewable judgment," "the legislative determination provides all the process that is due." *Holzsager*, 979 A.2d at 57 n.5 (quoting *Beretta*, 940 A.2d at 175-76).

Appellants next challenge the legislation as an unconstitutional bill of attainder. Even if we assume without deciding that the constitutional prohibition on bills of attainder applies to corporations (following the lead of the United States Court of Appeals for the D.C. Circuit), appellants would need to show that the amendment "(1) applies with specificity, and (2) imposes punishment." *Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*, 909 F.3d 446, 453-54 (D.C. Cir. 2018) (internal quotations omitted). Addressing the specificity prong, appellants argue that the amendment in effect singles them out based on the legislation's enactment at the request of the Attorney General while this appeal was pending. *See* Letter from Attorney General Karl A. Racine to Council Chairman Phil

Mendelson (Oct. 28, 2021). What they have entirely failed to do is show that the amendment is punitive. *See Foretich v. United States*, 351 F.3d 1198, 1218 (D.C. Cir. 2003) (noting that because "'virtually all legislation operates by identifying the characteristics of the class to be benefitted or burdened . . . it is not clear that the specificity requirement retains any real bite,'" and explaining that "the principal touchstone of a bill of attainder is punishment") (quoting *BellSouth Corp. v. F.C.C.*, 144 F.3d 58, 63 (D.C. Cir. 1998)).

The Supreme Court has articulated three tests for determining whether a law inflicts punishment as a potential bill of attainder: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish.'" *Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.*, 468 U.S. 841, 852 (1984) (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 475-76, 478 (1977)). None of these tests supports appellants' argument. First, removing an expedited dismissal mechanism does not fall within the "ready checklist of deprivations and disabilities" that have historically been considered punishment, such as banishment, "punitive confiscation of property," and an "enactment barring designated individuals or

groups from participation in specified employments or vocations . . . ." *Nixon*, 433 U.S. at 473-74. Nor is the amendment punitive under the functional test, which considers whether the "type and severity of burdens imposed" by the challenged law "reasonably can be said to further nonpunitive legislative purposes." *Id.* at 775-76. Here, the burden imposed is to continue defending against the lawsuit in the normal course of litigation. While we recognize that this burden is not insignificant and indeed is what the Anti-SLAPP Act was intended to mitigate, we are satisfied that the legislation reasonably advances the non-punitive purpose of ensuring that the Anti-SLAPP Act is applied according to Council intent and not used to inhibit government enforcement actions. Finally, despite appellants' contention that their "singling-out" in the midst of other legitimate emergencies "can only point to an inference of punitive purpose," we discern no basis for drawing such an inference. *See Kaspersky Lab*, 909 F.3d at 463-64 (Senator's comments referring to national security vulnerability created by the defendant company's products did not reflect a punitive intent because it "expressed a desire to take action" to advance "a nonpunitive objective" of protecting national security); *cf. Am. Bar Ass'n v. F.T.C.*, 636 F.3d 641, 649 (D.C. Cir. 2011) (noting "presumption of integrity that attaches to legislative action" and observing that legislation that moots an appeal may just mean that a pending lawsuit "convinced [the legislature] that the existing law is flawed" (internal quotations omitted)).

For similar reasons, we are also unpersuaded by appellants' argument that applying the amendment to this case would violate the Ex Post Facto Clause, which "prohibits retroactive application of penal legislation." *Landgraf*, 511 U.S. at 266. The Ex Post Facto Clause is implicated by any law that imposes punishment for an act that was innocent when committed, imposes a more burdensome punishment than would have applied when the act was committed, or "deprives one charged with [a] crime of any defense available according to [the] law at the time when the act was committed . . . ." *Collins v. Youngblood*, 497 U.S. 37, 41, 42 (1990) (internal quotations omitted). "Although the prohibition generally applies to criminal statutes, it may also be applied in civil cases where the civil disabilities disguise criminal penalties." *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir. 1985); *see also Landgraf*, 511 U.S. at 281 ("Retroactive imposition of punitive damages would raise a serious constitutional question.").[8] Appellants argue that the emergency amendment itself

---

[8] When confronted with a civil regulatory regime, as here, we consider whether the Council nevertheless intended the statute to impose punishment and, if not, "whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the Council's] intention to deem it civil,'" which requires "the clearest proof . . . ." *In re W.M.*, 851 A.2d 431, 440 (D.C. 2004) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) and *Hudson v. United States*, 522 U.S. 93, 100 (1997). Several factors guide this analysis, many of which overlap with the bill-of-attainder analysis, including considering the historical notions and

(continued…)

constitutes punishment and also removes a defense from punitive liability. But the test for determining whether a civil regulatory regime is punitive largely overlaps with the bill of attainder analysis, and appellants, who rely on the same arguments for both their bill-of-attainder argument and their Ex Post Facto argument, again have failed to convince us that exempting suits brought by the District from the Anti-SLAPP Act's protections constitutes punishment.

As to whether the amendment violates the Ex Post Facto clause by removing a defense to punitive liability, we are satisfied that it does not. That is because the Anti-SLAPP Act has never provided a complete defense, such that depriving appellants of its protections in this lawsuit would "change[] the legal consequences of acts completed before its effective date." *Nixon*, 954 A.2d at 1022 (quoting *Landgraf*, 511 U.S. at 269 n.23). Rather than altering a defendant's ultimate liability for the underlying conduct, the Anti-SLAPP Act creates a procedural mechanism that allows for expedited dismissal of *meritless* SLAPP suits. A plaintiff to a lawsuit can overcome an Anti-SLAPP motion to dismiss by

---

(…continued)
traditional aims of punishment, whether the regulation imposes an affirmative disability or restraint, and whether it rationally and non-excessively advances a non-punitive purpose. *Id.* at 444-45 (holding sex offender registration and notification system did not impose criminal penalty for purposes of Ex Post Facto prohibition on retroactivity).

demonstrating that the plaintiff is likely to succeed on the merits of its claim(s), *see* D.C. Code § 16-5502(b), i.e., that "the evidence [is] legally sufficient to permit a jury properly instructed on the applicable [law] to reasonably find in the plaintiff's favor." *Competitive Enter. Inst.*, 150 A.3d at 1221. Thus, retroactively removing the availability of the Anti-SLAPP special motion to dismiss does not run afoul of the Ex Post Facto clause by eliminating what otherwise would have been a sufficient defense.

\*\*\*

In sum, for the reasons discussed above, appellants have failed to persuade us that the emergency amendment to the Anti-SLAPP Act rendering it inapplicable to actions by the District violates the Home Rule Act, or that the emergency and temporary amendments to the act violate constitutional protections. We agree with the District that the legislation renders this appeal moot by removing any statutory basis for the relief appellants seek: reversal of the trial court's denial of their Anti-SLAPP Act special motion to dismiss. Accordingly, the appeal is hereby

*Dismissed as moot, and the matter is remanded to the trial court for further proceedings.*